**UNITED STATES, Appellee,**

v.

**Timmy D. PIATT, Sergeant, U. S. Marine Corps, Appellant.**

No. 45,416.
NMCM 82–0960.

U.S. Court of Military Appeals.

May 14, 1984.

*Lieutenant Louis F. Sadler*, JAGC, USNR (on brief).

For Appellee: *Lieutenant William V. Cerbone, Jr.*, JAGC, USNR (argued); *Commander W. J. Hughes*, JAGC, USN, *Lieutenant Commander W. A. Dorsey*, JAGC, USNR (on brief); *Lieutenant Colonel T. H. Eagen*, USMC.

Opinion of the Court

FLETCHER, Judge:

In September and October 1981, appellant was tried by a general court-martial composed of officer and enlisted members at the Marine Corps Recruit Depot, San Diego, California. Contrary to his pleas, he was found guilty of one specification of assault with a means likely to produce grievous bodily harm on Private P. E. Johnson, in violation of Article 128(b)(1), Uniform Code of Military Justice, 10 U.S.C. § 928(b)(1); one specification of assault consummated by a battery on Private B. A. Wright, in violation of Article 128(a), UCMJ, 10 U.S.C. § 928(a); and an additional specification of maltreatment of Private Johnson, in violation of Article 93, UCMJ, 10 U.S.C. § 893. He was sentenced to a bad-conduct discharge, confinement at hard labor for 1 year, forfeiture of $300.00 pay per month for 12 months, and reduction to the lowest enlisted grade. This sentence was approved by the convening authority and affirmed by the United States Navy-Marine Corps Court of Military Review. 15 M.J. 636 (1982).

This Court granted review in this case on four issues:

## I

WHETHER APPELLANT WAS DENIED HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL BECAUSE OF UNLAWFUL COMMAND INFLUENCE.

## II

WHETHER APPELLANT'S MOTION FOR A CHANGE OF VENUE WAS ERRONEOUSLY DENIED.

For Appellant: *Lieutenant Commander William A. DeCicco*, JAGC, USN (argued);

### III

WHETHER THE EVIDENCE OF-FERED BY THE DEFENSE ON THE MERITS AS TO APPELLANT'S PAR-TICULAR TRAIT OF BEING A GOOD MARINE CORPS DRILL INSTRUCTOR WAS PROPERLY EXCLUDED FROM CONSIDERATION BY THE COURT MEMBERS.

### IV

WHETHER THE EVIDENCE OF-FERED BY THE DEFENSE REGARD-ING THE MEANING OF THE TERM "THUMPER" AT MCRD SAN DIEGO WAS PROPERLY EXCLUDED FROM CONSIDERATION BY THE COURT MEMBERS.

The Court of Military Review directed its opinion in this case to the first two issues mentioned above. Although these questions are important, they appear to be primarily concerned with the sentence appellant received at this court-martial. The remaining issues, however, are directly related to the findings of guilty in this case, and it is to these questions that we will initially devote our attention.

Examination of the record of trial reveals the following uncontroverted facts concerning the above offenses. One week prior to July 26, 1981, appellant, a junior drill instructor, met two of his privates, Drake and Naylor, in the whiskey-locker of the squadbay. He told them that they were going to be his "thumpers" and asked them if they knew what that meant. The two recruits answered, "yes sir," but they did not state to him their particular understanding of the term. Appellant then told them that he would tell other privates to "make a headcall," and they too were to go into the head. Appellant also told them "not to leave any bruises."

The following day appellant told Private Wright to "make a headcall." Appellant then looked at Drake and Naylor and told them to "make a headcall." They followed Private Wright into the head where they pushed and shoved him between them and told him to straighten up. On July 26, 1981, appellant told Drake that Private Johnson was going to need "a good headcall." Subsequently, appellant ordered Private Johnson to "make a headcall." Appellant looked at Drake and Naylor and "snapped his fingers." They followed Private Johnson into the head and began striking him with their fists and berating him. This conduct continued for a few minutes until appellant called "secure the head."

Privates Drake and Naylor testified that they derived their understanding of the term "thumper" from their hometown experiences. Drake testified that "thump" meant to hit someone and that he understood appellant to mean to "hit them a couple times and try to straighten them out." He further testified that he interpreted appellant's remark "not to leave any bruises," to mean to go in there and push them around, maybe hit them, not hard, but hit them and don't really hurt them. Naylor testified that the word "thumper" meant "to hit a private on the head." He further testified that appellant said, "don't leave any type of bruises or anything like that," and he understood this to mean to "scare them . . . and if need be, maybe hit him once or twice."

Appellant testified in his own defense. He substantially confirmed the testimony of Drake and Naylor. He further stated that he said, "That means you don't hurt anybody or leave any bruises." He testified that he did not intend Drake or Naylor to use violence on anybody and understood, based on his experience in "Mike" Company, that a thumper was one who orally counseled a recruit. He stated that his intention was to have Drake and Naylor apply verbal peer pressure on these recruits outside the presence of the rest of the members of the squad so as to improve their performance without humiliating them.

Defense counsel at an Article 39(a) [1] session held during trial informed the military judge that he intended to call several wit-

---

1. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

nesses to testify as to the character of appellant. In particular, he noted that the testimony of these witnesses would be confined to their opinions of appellant's character as a drill instructor and his dedication to being a good drill instructor. The Government objected to the admission of this testimony because it was not evidence of a pertinent trait of character within the meaning of Mil.R.Evid. 404, and accordingly, as evidence of general military character, it was no longer relevant under the new Military Rules of Evidence. Defense counsel responded:

> I agree that general military character is no longer admissible to prove that an individual is unlikely to have committed the crime. However, it is clear that the offenses charged all relate to the performance of or nonperformance of obligations imposed upon the defendant as a Drill Instructor at the Marine Corps Recruit Depot. All of these offenses ... have been charged equally as a violation of Article 92 for a violation of the SOP relating to military training. So, the character is specifically limited—his character that we intend to introduce—to the specific pertinent trait that would be at issue here.

The military judge sustained the prosecution's objection to the admission of this testimony.

### Issues III and IV

■ The military judge and the parties to this trial agreed that a critical issue in this case was whether appellant intended Drake and Naylor to apply unlawful force to the two recruits, Johnson and Wright. In particular, he instructed the members that appellant could not be found guilty of the charged offenses unless they found that he "willfully" caused Drake and Naylor to assault the two victims and maltreat Johnson. *See* 18 U.S.C. § 2(b). He equated "willfully" with "intentionally" or "the doing of an act knowingly and purposely." In our opinion, these are general-intent instructions. *See* 2 Wigmore, *Evidence* § 242 (Chadbourn rev. 1979); Clark and Marshall, *A Treatise on the Law of Crimes* § 5.07

(7th ed. 1967); R. Perkins, *Criminal Law* 745–51 (2nd ed. 1969). They were appropriate with respect to the offenses charged. *United States v. Singletary*, 14 U.S.C.M.A. 146, 150, 33 C.M.R. 358, 362 (1963); *United States v. Norton*, 1 U.S.C.M.A. 411, 413, 4 C.M.R. 3, 5 (1952). They were also proper with respect to appellant's alleged liability as a causer. Article 77(2), UCMJ, 10 U.S.C. § 877(2); *United States v. Mayville*, 15 U.S. C.M.A. 420, 35 C.M.R. 392 (1965). *See generally* ALI Model Penal Code § 2.04(2)(a), Comments pp. 15–18 (Tentative Draft No. 1, 1953).

In the past, the general good character of an accused as a person was a relevant fact to disprove criminal intent. *See* J. Wigmore, *A Treatise on the Anglo-American System of Evidence in Trials at Common Law* § 56(3) (3d ed. 1940); para. 138*f*, Manual for Courts-Martial, United States, 1969 (Revised edition). In addition, the general good character of an accused as a soldier was a fact relevant for this purpose. Wigmore (3d ed.), *supra*, § 59; para. 138*f*, Manual, *supra*.

■ Under the Federal Rules of Evidence, a generally good character as a person is no longer a fact relevant for the above purpose. Instead, only a particular trait of such a character is admissible for this purpose and then only when this character trait is pertinent to a particular issue in the case. Fed.R.Evid. 404(a)(1); *cf. Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). This rule was also adopted in Mil.R.Evid. 404(a)(1). However, the drafters of the new Military Rules of Evidence made clear that an accused's military character was not per se inadmissible at a court-martial under this rule. They said:

> Rule 404(a)(1) allows only evidence of a pertinent trait of character of the accused to be offered in evidence by the defense. This is a significant change from paragraph 138*f* of the present Manual which also allows evidence of "general good character" of the accused to be received in order to demonstrate that the

accused is less likely to have committed a criminal act. Under the new rule, evidence of general good character is inadmissible because only evidence of a specific trait is acceptable. It is the intention of the Committee, however, to allow the defense to introduce evidence of good military character when that specific trait is pertinent. Evidence of good military character would be admissible, for example, in a prosecution for disobedience of orders.

Appendix 18, Manual, *supra.* In this context, a person's military character is properly considered a particular trait of his general character and a fact which may be relevant at a court-martial depending upon the issue for which it is offered. *United States v. Clemons,* 16 M.J. 44 (C.M.A. 1983).

■ In the present case, defense counsel was quite particular in his offer of proof. Mil.R.Evid. 103(a)(2). He stated that he intended to present evidence of appellant's good character as a drill instructor, not simply his general military character. The Government's argument that such character trait is the equivalent of his general military character is not persuasive. *See generally* Wigmore (3d ed.), *supra,* § 59. In any event, trial defense counsel correctly pointed out that the charges against appellant arose in the context of the performance of his military duties as a drill instructor. A past character for performing such duties in a proper manner would tend to undermine the implication that he willfully departed from normal standards in training Johnson and Wright. Mil.R.Evid. 401, and 404(a)(1). In our opinion, his character as a good drill instructor was clearly pertinent to the question of his intent to do the charged offenses. *United States v. Clemons, supra* at 47.

The defense at a later point in this court-martial was denied the opportunity to question Lieutenant David Morey and Sergeant Max Schwarzenback as to the common understanding of the term "thumper" in "Mike" Company, Third Battalion, Recruit Training Regiment. Defense counsel averred that this testimony was relevant to show appellant's state of mind at the time of the offense. The military judge refused to admit this testimony because the defense could not establish that these witnesses had discussed this matter with appellant prior to the alleged offenses.

■ As pointed out earlier, the military judge and the parties to this trial agreed that a critical issue in this case was whether appellant intended Drake and Naylor to assault the two victims. It was also agreed that appellant could only be found guilty of the charged offenses if he knew Drake and Naylor would assault the two victims. In this context it was further agreed that if appellant had made an honest mistake of fact as to Drake and Naylor's understanding of the term "thumper," appellant could not be found guilty of the charged offenses. *See* para. 216*i,* Manual, *supra.* Since these were general-intent offenses, an honest and reasonable mistake instruction perhaps would have been more appropriate. *See United States v. Holder,* 7 U.S.C.M.A. 213, 217, 22 C.M.R. 3, 7 (1956); *see also United States v. Mayville, supra.*

■ Knowledge may be generally defined as "*consciousness,* i.e., presence in the mind of an impression as to a given fact." 2 Wigmore, *supra* § 244. Professor Wigmore points out that knowledge, as a state of mind, can be evidenced by circumstances other than an express communication of a fact by one person to another. One such method is to show that the given fact, here the meaning of the word "thumper," was recognized in the community and the person charged with such knowledge was a member of the community. *See* 2 Wigmore, *supra,* § 245(3). The military judge's particular reason for excluding the defense witness' testimony therefore cannot be sustained.

Here the question was whether appellant knew that Drake and Naylor understood "thumper" to be a person who exercises physical force on another. Appellant testified that based on his experience as a drill instructor in "Mike" Company, he understood a "thumper" to be a person who verbally counsels a recruit to improve his per-

formance, but does not employ physical force. He further asserted that he made a mistake in not defining the term "thumper" more particularly for Drake and Naylor. The thrust of this testimony is that appellant did not have knowledge of Drake's and Naylor's understanding of the term "thumper."

The proffered testimony of the two defense witnesses would have corroborated appellant's testimony as to this state of mind at the time of the offense. The fact that the term "thumper" was commonly understood in "Mike" Company to mean a person who verbally counsels a recruit supports his assertion as to the source of his understanding of the term. Since appellant, Drake and Naylor, were all members of "Mike" Company, the above fact could also add some credence to his implied assertion that he honestly believed Drake and Naylor shared this common understanding of the term. *See* 2 Wigmore, *supra*, § 245(3). In our opinion, such evidence was clearly relevant within the meaning of Mil. R.Evid. 401.

■ The final question we will address concerning these two granted issues is whether appellant was prejudiced by the erroneous rulings of the military judge. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

The record of trial in this case reveals that the critical question before the members was appellant's state of mind at the time he caused Drake and Naylor to assault and maltreat the victims. The Government's evidence was not overwhelming on this issue and to a certain extent was consistent with appellant's denial of the requisite criminal intent. The excluded evidence to various degrees supported appellant's position. In the absence of other evidence in this case which would have served the same purposes as the evidence excluded,[2] we believe a rehearing is warranted.

### Issues I and II

The remaining issues in this case concern allegations of unlawful command influence. Article 37, UCMJ, 10 U.S.C. § 837. The Court of Military Review, as earlier mentioned, has made findings of fact and conclusions of law with respect to these issues. Since a rehearing must be ordered on both findings and sentence on other grounds, we find it unnecessary to review their decision. Our silence, however, should not be construed as judicial condonation of the events surrounding this case or approval of the manner in which the trial court or the Court of Military Review dealt with these issues. *See generally United States v. Karlson*, 16 M.J. 469 (C.M.A. 1983).

The decision of the United States Navy-Marine Corps Court of Military Review is reversed and the findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge EVERETT concurs.

COOK, Judge (concurring in the result):

This case was tried on the erroneous theory that both the assault charges and the maltreatment charge were specific intent offenses.* Under this theory the excluded

---

2. Prosecution Exhibit 1, which was a record of evaluations of appellant as a drill instructor, was admitted after the members had entered findings of guilty in this case and only on the question of sentence.

* The military judge instructed the members as follows:

> You are advised that a person who commits an offense is a principal. Likewise, one who willfully causes an act to be done which, if directly performed by him, would be punishable as an offense, he is also a principal and is just as guilty of that offense as he would have been had he directly performed the act himself. "Willfully" means intention-

ally. It means the doing of an act knowingly and purposely, intending the natural and probable consequences which the common experience of mankind would expect to flow from the act. Consequently, *if you are satisfied by legal and competent evidence beyond reasonable doubt that Sergeant PIATT willfully caused an act of assault which resulted in an offense with which he is charged or any lesser included offense, you may find him guilty of that offense even though he did not directly perform the assault.* Now, assault is a term of art. Assault refers to an offer, without legal justification or excuse, to do bodily harm to another. Assault is an intentional act which foreseeably puts another in

testimony was relevant and material to the defense and should have been admitted. However, assault, and, by implication, the maltreatment, may be committed by "a culpably negligent act or omission." Paras. 207*a* and *c*, as well as 172, Manual for Courts-Martial, United States, 1969 (Revised edition). Although the majority opinion is limited by the law of the case, in the event of retrial the thrust of that opinion should not be misinterpreted. I agree with

> reasonable apprehension that force will immediately be applied to his person. An assault is not mere use of threatening words. More than threatening words is required. An example of an assault is or would be the waiving of ones fists in anothers [sic] face in a menacing, threatening manner. *If you are satisfied beyond a reasonable doubt that Sergeant PIATT willfully caused an assault in each one of these specifications then he is responsible for the natural and probable consequences of that assault.* As I indicated earlier, this applies to the lesser included offenses also. Are there any questions on the instructions concerning the law of principals? This overall applies to all the specifications and lesser included offenses.
>
> (There was a negative response from the members of the court.)
>
> Now, as you may recall from the evidence, an issue or special defense of mistake of fact has been raised. Now, this applies to all the specifications alleged and the lesser included offenses. That is, that the accused, Sergeant PIATT, did not know that Privates DRAKE and NAYLOR would actually strike the victims because he did not know how they inter-

the review of the staff judge advocate "that given the training atmosphere, the circumstances under which his instructions were given to DRAKE AND NAYLOR, and the contents of those instructions, it was reasonably foreseeable that the alleged offenses would occur."

In any event the excluded testimony would probably be admissible even under a correct interpretation of the law.

> preted the term "thumper." He lacked knowledge of how they interpreted the term "thumper." *If the accused was under the mistaken belief that DRAKE and NAYLOR would not strike the victims, he could not be found guilty of the aggravated assault or its lesser offense or maltreatment or their lesser offenses. Such an erroneous belief, on the part of Sergeant PIATT, no matter how unreasonable, would exonerate the accused if that belief is an honest mistake.* That is, if Sergeant PIATT honestly believed that neither DRAKE nor NAYLOR would strike the victims. Now honest means not fained [sic]. In determining whether the accused was under the mistaken belief, you should consider the probability or improbability of the evidence that relates to his belief. In this regard, you can consider the accused's experience on the drill field. You can consider DRAKE and NAYLOR'S experience. You can consider their backgrounds. Their backgrounds in their respective home towns and any other evidence which might have a bearing on the issue of his mistaken belief or his belief.
>
> (Emphasis added.)