UNITED STATES, Appellee,

v.

Corporal Leonard A. KAHAKAUWILA,
U.S. Marine Corps, Appellant.

No. 46680/MC.
NMCM No. 82–4935.

U.S. Court of Military Appeals.

Oct. 15, 1984.

For Appellant: *Lieutenant Commander William A. DeCicco,* JAGC, USN, and *Lieutenant Daniel Lippman,* JAGC, USNR (on brief); *Lieutenant Commander Georgia L. Winstead,* JAGC, USNR, and *Lieutenant Stephen R. Cochell,* JAGC, USNR.

For Appellee: *Commander W.J. Hughes,* JAGC, USN, and *Lieutenant Commander R. Clayton Seaman, Jr.,* JAGC, USN (on brief); *Lieutenant Colonel T.H. Eagen,* USMC.

*Opinion of the Court*

EVERETT, Chief Judge:

Tried by a special court-martial military judge sitting alone, the accused was convicted, despite his pleas, of possessing, selling, and transferring marihuana, in violation of a lawful general regulation and, consequently, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C § 892. He was sentenced to a bad-conduct discharge, confinement at hard labor for 30 days, forfeiture of $488.00 pay per month for 1 month, and reduction to pay grade E–3. The officer exercising general court-martial authority approved the findings and the sentence except for forfeitures exceeding $366.00 per month for 1 month, and suspended execution of the bad-conduct discharge for 1 year with provision for automatic remission.

■ We granted the following specified issue:

WHETHER THE MILITARY JUDGE
ERRED IN RULING THAT EVIDENCE
OF THE APPELLANT'S GOOD MILI-

TARY CHARACTER WAS NOT AD-MISSIBLE.

We decide that he did and reverse.

The factual basis of the offense of which the accused was convicted is uncomplicated. A fellow Marine, who worked as an undercover informer for the Naval Investigative Service (NIS), testified that he bought marihuana from the accused in the barracks during duty hours. The sale was "controlled" but was not witnessed by the controlling agent. Subsequent attempts to effect sales by the accused were unsuccessful. The accused denied selling to the informer. Thus, the essential issue in this case is the credibility of the accused's denial as balanced against the informer's testimony. The latter was considerably impeached at trial[1] while the accused offered evidence of his impeccable military character to bolster his own credibility. Trial counsel objected to the proffer of such evidence on the basis of Mil.R.Evid. 404(a), which provides, in pertinent part:

> Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:
>
> (1) ... Evidence of a *pertinent* trait of the character of the accused offered by an accused, or by the prosecution to rebut the same;
>
> * * * * * *

Manual for Courts-Martial, United States, 1969 (Revised edition) (emphasis added). In response, defense counsel argued that since the offenses charged were violations of a "general order," they were military offenses, and, thus, the accused's entire military record and military character were relevant. The military judge permitted de-fense counsel to question military witnesses as to the accused's character for obedience, but otherwise sustained the objection. Defense counsel then made offers of proof that the accused's platoon commander "would testify that the [accused's] work performance was excellent"; that "his [military] appearance was outstanding"; and that "his conduct as a squad leader was very dependable." A similar offer of proof was made as to the expected testimony of the accused's company commander. In addition, the accused's military records were offered. The military judge excluded all of this evidence.[2]

It is the definition of the word "pertinent" in Mil.R.Evid. 404(a)(1) that is the sticking point. The thrust of the defense position is that a person of demonstrated good military character is less likely to commit military offenses. The Drafters' Analysis recognizes the inherent difficulties in applying the rule.

> It is the intention of the Committee, however, to allow the defense to introduce evidence of good military character when that specific trait is pertinent. Evidence of good military character would be admissible, for example, in a prosecution for disobedience of orders.

Appendix 18, *Manual, supra* at A18–61.

The military rule is taken from the Federal Rules of Evidence. However, the peculiar nature of the military community makes similar interpretation inappropriate. Unlike his civilian counterpart, the conduct of a military person is closely observed both on and off duty, and such observation provides the material upon which performance reports and other evaluations are based.[3] It would seem apparent that for

---

1. The informer's prior involvement in drugs and possession of a false identity card were brought out on cross-examination.

2. The evidence was later admitted during the sentencing procedures.

3. Evidence of an accused's character as a law-abiding person was generally admissible at common law. *See United States v. Angelini*, 678 F.2d 380 (1st Cir. 1982), and cases cited therein.

> This privilege [of introducing favorable character evidence] is sometimes valuable to a defendant for this Court has held that such testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt and that in the federal courts a jury in a proper case should be so instructed. *Edgington v. United States*, 164 U.S. 361 [17 S.Ct. 72, 41 L.Ed. 467].

*Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 219, 93 L.Ed. 168 (1948).

those offenses which are militarily oriented, evidence of conformance to military standards would be relevant, at least in terms of Mil.R.Evid. 403.[4]

We have considered the admissibility of such evidence in three cases. In *United States v. Clemons*, 16 M.J. 44 (C.M.A. 1983), the accused defended his possession of private property removed from the barracks on the grounds that he took it to teach the owners a lesson in securing their property. We upheld his privilege to introduce evidence of good military character as a noncommissioned officer as relevant to his assertion of acting in good faith in accordance with that role. In *United States v. Piatt*, 17 M.J. 442 (C.M.A. 1984), we reversed a decision which prevented the accused from introducing evidence of his good character as a drill instructor where he was charged with misconduct toward trainees. In *United States v. McNeill*, 17 M.J. 451 (C.M.A. 1984), we held that evidence of the accused's good military character was admissible in defense to an allegation of sodomy on an officer candidate under the accused's guidance.

 Here the offense of selling marihuana was charged as a violation of Naval regulations. Evidence of the accused's performance of military duties and overall military character was admissible to show that he conformed to the demands of military law and was not the sort of person who would have committed such an act in violation of regulations. In view of the closeness of the case, the impeachment of the character of the informer,[5] and the military judge's obvious difficulties [6] in reaching findings of guilty,[7] we cannot say the exclusion of such evidence reasonably could not have prejudiced the accused's case.

The decision of the United States Navy-Marine Corps Court of Military Review is reversed. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judge FLETCHER concurs.

4. Mil.R.Evid. 403 provides:

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

5. The military judge permitted defense counsel to solicit the opinion of several defense witnesses as to the informer's reputation for truth.

6. The difficulties experienced by the military judge are shown by his reopening the trial prior to findings for the purpose of further examination of the controlling NIS agent.

7. The military judge gave some insight on his problem relating to findings just prior to imposing sentence:

 Obviously, as I'm sure you're aware of, I believed ... [the informer]. I did not believe your testimony that you were innocent, and framed. I spent a lot of time deliberating, trying to think of a reason why not to believe ... [the informer]. There simply was none. It was not easy for me to find you guilty; but it was my duty to do so because I was convinced beyond a reasonable doubt of your guilt. It's going to be no easier for me to pronounce sentence on you ....