**UNITED STATES**

v.

**Thomas M. McCONNELL, 206 42 0295, Instrumentman Seaman (E–3), U.S. Navy.**

**NMCM 84 2787.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 29 May 1984.

Decided 31 Jan. 1985.

CAPT Edward W. Hosken, Jr., JAGC, USN, Appellate Defense Counsel.

LT Thomas H. Dinkelacker, JAGC, USNR, Appellate Defense Counsel.

LCDR Jeffrey S. Sawtelle, JAGC, USN, Appellate Government Counsel.

Before GREGORY, Senior Judge, and MITCHELL and BARR, JJ.

MITCHELL, Judge:

The above-styled case was originally reviewed and the findings and sentence affirmed by this Court on 10 August 1984, the appellant having originally waived appellate representation. Thereafter, the appellant notified the Court of his retention of civilian counsel and moved for reconsideration. We granted the motion for reconsideration.

At trial, the appellant sought to admit two Enlisted Performance Reports, one for the period 15 April 1980—30 June 1980 and the other for the period 15 March 1982—31 January 1983, solely to establish the appellant's military character. At general issue was the appellant's guilt of cocaine use (Article 134, Uniform Code of Military Justice, 10 U.S.C.A. § 934) proved solely by the results of a urinalysis. The appellant denied ever using cocaine and relied upon character evidence and some facts to prove his denial. The military judge sustained an objection by trial counsel to the admission of the performance evaluations. On appeal, the appellant asserts error because the military judge should have admitted the reports or, at least, the written comment sections thereof.

We note that in this case the appellant sought to introduce the Enlisted Performance Reports at trial solely as evidence of military character and not as evidence of his character for law abidingness. In this respect, the case at bar differs from *United States v. Clemons*, 16 M.J. 44 (C.M.A. 1983), which held that in a proper case evidence of character for law abidingness was pertinent and admissible under Mil.R. Evid. 404(a)(1). *Clemons* also set forth the proposition that evidence of military char-

acter may be a pertinent character trait within the meaning of the Rule, depending upon the extent to which miltary duty is circumstantially involved in either the offense or the facts relied upon to defend the case. *See also, United States v. Kahakauwila*, 19 M.J. 60 (C.M.A.1984) (military character pertinent and admissible in case involving violation of specific regulations); *United States v. McNeill*, 17 M.J. 451 (C.M. A.1984) (military character pertinent and admissible in sodomy case involving on-duty superior-subordinate relationship); *United States v. Piatt*, 17 M.J. 442 (C.M.A. 1984) (military character pertinent and admissible in aggravated assault/maltreatment case involving superior-subordinate relationship). While we are aware of the holdings in *United States v. Vandelinder*, 17 M.J. 710 (N.M.C.M.R.1983), and *United States v. Weeks*, 17 M.J. 613 (N.M.C.M.R. 1983), we note that they were decided before the *McNeill, Piatt* and *Kahakauwila* cases and do not follow the dictates of *Clemons* in the light of those cases.

The case at bar does not involve a peculiarly military offense, violation of specific orders, specific military duties or a defense sounding in the performance of or neglect of any specific duty, or any other theory to which soldierly virtue is directly relevant. We reject the argument that the last element of Article 134, UCMJ, offenses (prejudice to good order/service discredit) brings the instant offense within the parameters of *Clemons*. This element, common to all general article offenses, has nothing to do with whether or not the appellant committed the offense; rather, it is solely related to the factual character of the misconduct alleged, whether or not committed by the appellant. Though not so stated in the statutes, virtually every offense covered by a specific article of the UCMJ involves one or both of the prongs of the pertinent Article 134 element. Consequently, it is not the sort of element to which military character can logically relate within the meaning of *Clemons* and cannot, therefore, provide a basis for ad-

mitting evidence of military character under Mil.R.Evid. 404(a)(1).

We also reject the argument that policy pronouncements emanating from the Chief of Naval Operations regarding the impact of disposition of any acts of misconduct, whether a drug, bad check, larceny or other offense, can change the character of any such offense to one involving military duties, or necessarily involving a defense sounding in military duties, or so change the character of performance evaluations as to provide a basis for admitting evidence of military character under Mil.R.Evid. 404(a)(1). To this extent, we do not agree with the rationale of the learned Senior Judge Gladis in his dissenting opinion in *United States v. Vandelinder, supra* at 712. Rather, we read *Clemons* as holding that Mil.R.Evid. 404(a)(1) restricts to the most relevant the character evidence to be used at trial, and contemplates only those traits directly pertinent to the issues of the case. Thus, in the case at bar, while evidence of law abidingness [1] or of abstinence from drug use (if indeed these are specific character traits at all) may have been pertinent, the questioned performance reports proffered solely to show military character were not pertinent. In this respect, it is the proponent of evidence who bears the responsibility for identifying the proper grounds for the admissibility of evidence. We will not permit the appellant at this late stage to justify the admissibility of excluded evidence on grounds other than those urged at trial.[2]

Finally, if character evidence is to be admitted simply because it is stated to be somehow relevant to a defense theory without there being a relevance in fact, as urged by the appellant, then military character evidence would be admissible in virtually every court-martial. In such circumstances, Mil.R.Evid. 404(a)(1) is extinguished insofar as military character is concerned. The Court of Military Appeals, in general, and Judge Fletcher in particular, have not heretofore been bashful about pronouncing such a sweeping rule. If that Court so viewed the *Clemons* case, the mental gymnastics involved in that and subsequent cases were wholly unnecessary.[3]

We hold that, in the circumstances of this case, enlisted performance records offered solely to show military character were irrelevant under Mil.R.Evid. 404(a)(1) where the offense involved was not a peculiarly military offense, did not directly involve the appellant's military duties, and where the proffered defense theory did not assert that the misconduct occurred in furtherance of a lawful objective related to the appellant's specific military duties.

█ The appellant also asserts military judge error for the exclusion of an endorsement on a hardship discharge request of the appellant's where a theory of the defense was that the appellant was motivated to stay out of disciplinary problems. There was already ample and uncontested evidence of record concerning the condition of

---

1. We note that the appellant offered and the military judge admitted evidence of the appellant's character for law abidingness and veracity. We avoid, for purposes of deciding this case, opening the Pandora's Box manifest in the general or specific character of general moral character, military character, character for law-abidingness, and other more absurd things often referred to as character traits for purposes of admitting character evidence of whatever sort.

2. We do not reach the question of whether the performance reports are a proper vehicle for establishing a relevant character trait.

3. Neither is this a case in which an accused, confronted by a paper or lab report case, was denuded of a defense and forced to rely solely upon character evidence of whatever sort that

could be marshalled. The appellant offered his own sworn denial, evidence of his truthfulness, evidence of his law abiding character, evidence of a motive to avoid misconduct, knowledge that he was subject to urinalysis, evidence that he voluntarily submitted to the fateful test, and evidence of the opportunity, albeit not particularly detailed, for the innocent ingestion of the cocaine. In any event, we do not see the issue in this case being elevated to the Constitutional dimensions envisioned by the concurring opinion of Chief Judge Everett in *Clemons*. *See Edgington v. United States,* 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467 (1896); *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

the appellant's mother. The proffered exhibit was the first endorsement on the appellant's request and contained virtually no useful information, being suitable only for substantiating the uncontested fact that such a request had been filed and forwarded. Furthermore, the endorsement indicates that the request was filed about eight months prior to the commission of the instant offense and some fourteen months before trial. On these facts, we hold that the military judge did not err in excluding the document, even if considered relevant under Mil.R.Evid. 401, 403 and assuming, *arguendo*, that the proffered endorsement was a proper method of proving the matter.

■ The appellant challenges the validity of his conviction on the grounds that proof of a mere cocaine-positive urinalysis is insufficient to establish beyond reasonable doubt that the conduct was service discrediting or prejudicial to good service order. We do not read *Murray v. Haldeman*, 16 M.J. 74 (C.M.A.1983), to compel such a conclusion or to rebut the commentary of the Court of Military Appeals regarding drug abuse contained in *United States v. Trottier*, 9 M.J. 337 (C.M.A.1980). The assignment of error is rejected.

■ The appellant lastly challenges the appropriateness of the approved punitive discharge in light of ten years of service, favorable record and personal hardships. We have carefully considered the facts of this case, including the eloquent sentence argument of trial defense counsel, but find the unsuspended punitive discharge to be nonetheless appropriate.

The findings of guilty and the sentence as approved on review below are affirmed.

Senior Judge GREGORY concurs.

BARR, Judge (concurring):

Though concurring in the result reached in the majority opinion—that relief to appellant is not warranted—I write separately to first, indicate wherein I depart from that opinion in its analysis of the issue, and second, voice my alarm at what can now be read as a move by the Court of Military Appeals to wholly subordinate the intention of the drafters of Rule 404, Military Rules of Evidence (Mil.R.Evid.)—and thus emasculate that intention—to that Court's own predilections of how the system of military justice should be administered. That predilection is, in a word, civilianization—molded in the federal standard and being accomplished by the process of selective incorporation of federal precedent into military law.

The issue in this case, as ably demonstrated in the majority opinion, concerns the meaning of, and reach to be afforded to, Rule 404, Mil.R.Evid.—specifically, section (a)(1). The analysis necessary to such determination must begin, not with the wording of the rule—or the interpretations of *selected* federal courts of appeals—but with an understanding of the genesis of the rule. That genesis is Paragraph 138*f*(2), *Manual for Courts-Martial, 1969 (Rev.)*, (MCM, 1969), which in pertinent part, provided:

> To show the probability of his innocence, the accused may introduce evidence of his own good character, including evidence of his military record and standing as shown by authenticated copies of efficiency or fitness reports or otherwise and *evidence of his general character as a moral, well-conducted person and law-abiding citizen.* However, he may not, for this purpose, introduce evidence as to some specific trait of character unless evidence of that trait would have a reasonable tendency to show that it was unlikely that he committed the offense charged.... After the accused introduces evidence as to his good character, the prosecution may, in rebuttal, introduce evidence as to his bad character. However, the character evidence in rebuttal which may properly be received will be limited by the scope of the character evidence introduced by the accused. Thus, when in a prosecution for larceny the accused has confined his proof of good character to evidence of his good character as to honesty, the prosecution

may not show in rebuttal that the accused has a bad character as to general morality and conduct but will be limited, with respect to the introduction of character evidence in rebuttal, to proof of his bad character as to honesty; *but if the accused has introduced evidence of his general good character as a moral law-abiding person* the prosecution may show not only that the accused has a bad moral character generally but also that he has a bad character as to honesty. (Emphasis added.)

The above Manual provision enunciated, with unequivocal clarity, the following rules which then prevailed:

(1) An accused can introduce evidence of his general character in order to show the probability of his innocence;

(2) An accused can also introduce evidence of his military character—his record and standing—for the same purpose;

(3) General character evidence is defined as evidence that he is a moral, well-conducted person and evidence that he is a law-abiding citizen;

(4) Military character evidence is distinct from evidence of general character but is also general in nature, that is, it is not to be classified as a specific trait;

(5) Evidence of an accused's character as to a specific trait is not admissible unless evidence of that specific trait is relevant to the offense with which he is charged; and,

(6) Evidence of a specific trait is not the same as evidence of general character or military character.

There exists a quasi-syllogistic message within the referenced Manual provision. In the words of the Manual, it can be postulated thusly: IF specific trait evidence does not include general character evidence, AND general character evidence includes that showing a moral and well-conducted person and a law-abiding citizen, THEN specific trait evidence does not include such evidence as would be offered to show that one is a moral, well-conducted, and law-abiding person or citizen. The inescapable conclusion is that evidence which does no

more than reflect that an accused is a law-abiding citizen falls within the "general character evidence" prong of that Manual provision.

Law-abidingness was not recognized, or treated, as a specific trait. It was synonymous with general character. This point is further made abundantly clear in the example given in Paragraph 138*f*(2) concerning the specific trait of honesty as a defense to a charge of larceny. Similarly, military character, though distinct from general character, was general in nature and not intended to equate to a specific trait.

The adoption of the Military Rules of Evidence ushered in—or purported to do so—a dramatic change from pre-existing Manual law. Rule 404(a) and (a)(1), made pertinent by the present litigation, provides:

(a) Character evidence generally. Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(1) Character of the accused. Evidence of a pertinent trait of the character of the accused offered by an accused, or by the prosecution to rebut the same(.)

The drafter's analysis leaves no room for interpretation as to what was intended by this change:

Rule 404(a)(1) allows only evidence of a pertinent trait of character of the accused to be offered in evidence by the defense. This is a significant change from ¶ 138*f* of the present Manual which also allows evidence of "general good character" of the accused to be received in order to demonstrate that the accused is less likely to have committed a criminal act. Under the new rule, evidence of general good character is inadmissible because only evidence of a specific trait is acceptable. It is the intention of the Committee, however, to allow the defense to introduce evidence of good mili-

tary character when that specific trait is pertinent. Evidence of good military character would be admissible, for example, in a prosecution for disobedience of orders. The prosecution may present evidence of a character trait only in rebuttal to receipt in evidence of defense character evidence. This is consistent with present military law.

When one reads the words chosen by the drafters to express the new rule in concert with what they espoused as their intent, the general rule which emerges is that *all* character evidence—both general and of specific traits—is inadmissible if offered to prove conformance of conduct therewith. The exception to this general statement of inadmissibility permits only the introduction of evidence of a "pertinent trait" of an accused's character. General character evidence is never admissible. The drafters must be presumed to have acted with knowledge of the breadth of application—both in language and in judicial interpretation—accorded the prior Manual provision. If it was not their intention to exclude what was specifically defined as general character evidence—well conducted and moral person and law-abiding citizen—and as military character evidence, under the prior rules, would they not have made such intention explicit? The answer must be yes. The proof lies not alone in the clear language chosen for explication of the new rule. It is contained also within the explanation offered for the rejection of the previous broad military rule, in which explanation was articulated the symbiotic relationship which military character evidence would now hold to specific trait evidence. In short, military character evidence was specifically redefined and transformed from being classified as general in nature into being that of a specific trait. By this transformation, however, it did not reemerge in the image and with the trappings of its role under para. 138*f*. No longer was military character evidence to be admissible, without qualification as to relevance, at the unfettered option of an accused. It, instead, became subject to the qualifier for admissibility expressed in

404(a)(1) that it be a "pertinent" trait—by which the drafters meant "specific trait evidence" as that term was understood under para. 138*f*, MCM, 1969.

The true reason the issue in the instant case has been raised for consideration is that the signals of decision emanating from the Court of Military Appeals have both sounded the reincarnation of the old Manual provisions and indicated that pure federal law, not the intent of the drafters of the Military Rules of Evidence—and hence the President—is to be applied in trials by court-martial. The cases which provide these signals more than hint at an effort toward civilianization—they have all but made the voyage complete.

The first case under the Military Rules of Evidence to consider the impact of Rule 404(a)(1) was *United States v. Clemons*, 16 M.J. 44 (C.M.A.1983). Appellant in that case was charged with larceny of the personal items of others from the barracks while he was performing duty as Charge of Quarters. Appellant defended the charges on the ground that his obtaining custody of the items was pursuant to his duty to secure loose property and for the purpose of teaching his fellow soldiers a lesson about leaving their property unsecured. The military judge rejected that appellant's attempt to introduce, under Rule 404(a)(1), Mil.R.Evid., evidence of his good military character and character for lawfulness. The grounds stated were two-fold: (1) That, though federal law was "interesting" and "enlightening," it was not binding on his decision; and, (2) That the intent of Rule 404(a)(1) was to preclude the unlimited right to introduce general character evidence which obtained under para. 138*f*(2), MCM, 1969.

The lead opinion in *Clemons* concluded that "the military judge erred in his misguided view of the applicability of federal precedent, *and* in his substantive rulings regarding Mil.R.Evid. 404(a)(1)." *Clemons*, 16 M.J. at 45. As to the first stated ground of error, that opinion, after reciting the provisions of Rule 101, Mil.R.Evid., as

well as the drafters' commentary on that rule, held that:

It is entirely clear that had this military judge applied Federal precedent, he would have acknowledged clear legal precedent for admission in this case of evidence of appellant's character for lawfulness.

With this comment one can hardly disagree. The federal case relied upon, *United States v. Hewitt*, 634 F.2d 277 (5th Cir. 1981), as well as a subsequent decision, *United States v. Angelini*, 678 F.2d 380 (1st Cir.1982), both pronounce the federal rule of two circuits that evidence of one's character for law-abidingness (lawfulness) is admissible under Rule 404(a)(1), Federal Rules of Evidence. Both cases recognized the distinctions which pertained under the common law between evidence of general character, which was not admissible, and evidence of pertinent traits, which was admissible. Both cases, though admitting to the intellectual dilemma posed by having to classify the amorphous and general term "law-abidingness" as a specific trait in order to keep faith with the general rule of inadmissibility of Federal Rule 404(a)(1), nevertheless, on the basis of selected state and federal decisions, reached that conclusion.[1]

If military courts were required, in the course of interpreting the Military Rules of Evidence, to follow the decisions of federal courts in the latters' construction of the Federal Rules of Evidence, I would admit of there existing reason for finding *Hewitt* and *Angelini* to be "clear legal precedent." I do not, however, believe such a requirement to be ordained by our Rules or by the Uniform Code of Military Justice (UCMJ). To the contrary, the very commentary of the drafters of Rule 101, which was relied upon by the lead opinion in *Clemons* to reach such a conclusion, is wholly at variance with that conclusion. Rule 101, read in conjunction with Article 36, UCMJ, 10 U.S.C.A. § 834, under which latter authority the Rule was promulgated, establish the principle which has always been *ordered* to be applied since the advent of the Code in 1951. If a military rule promulgated by the President treats of an issue, recourse to Federal law—even though the rule may be similar—is not necessary, and, in fact, is not permitted. It is only where the military rules *"do not dispose of an issue* (that) the Article III federal practice *when practicable and not inconsistent or contrary to the Military Rules* shall be applied." (Emphasis added.) Further, "(t)o the extent that a Military Rule of Evidence reflects an express modification of a Federal Rule of Evidence or a federal evidentiary procedure, the President has determined that the unmodified Federal Rule or procedure is, within the meaning of Article 36(a), 10 U.S.C.A. § 834(a), either not 'practicable' or is 'contrary to or inconsistent with' the Uniform Code of Military Justice." [2] *See* drafters commentary to Rule 101(b), Mil.R.Evid.

The question thus becomes whether Rule 404(a)(1), Mil.R.Evid., was drafted with the intention of creating a mirror image, not just in words, but also in intended application and scope, of the Federal Rule. I submit the answer is no. The drafters made clear the departure from the old rules of para. 138*f*, MCM, 1969. The prior rule admitting general character evidence was abandoned. They specifically redefined by categorization military character evidence as a specific trait, but only when pertinent. There is no indication in the drafters' commentary to the Military Rules of Evidence that the common law of the states was to be adopted.

Contrary to the drafters of the Federal Rule, the drafters of the Military Rule (404(a)(1)) had a distinct history of practice to reject—which they did. To refer to my

---

1. The Federal Rules of Evidence took effect on 1 July 1975. It is interesting to note that every state case, and all but one federal case, relied upon by the Court in *Hewitt* to support its position was decided prior to the above date.

2. While the concurring opinions in *Clemons* purport to reject the broad incorporation rule enunciated in the lead opinion, the comments of the Chief Judge suggest that his rejection may be more of form than of substance.

comments earlier, general good character—the concept rejected by the new Military Rules of Evidence—was defined within para. 138*f*, MCM, 1969, as being virtually synonymous with "moral and well-conducted" and "law-abiding." Unless we ascribe to the drafters an inability to comprehend what they were explicitly rejecting, the conclusion is compelling that, in declaring general character evidence to be inadmissible under the new Rule, the drafters were also declaring evidence of law abidingness to be similarly inadmissible, it being the same under the then extant military law as general character evidence.

If, under the Military Rules of Evidence, law-abidingness is to be considered a *specific trait*—the latter being the exact term employed by the drafters of those Rules to declare what was admissible—and law-abidingness is defined as obedience to the law, then it is inconceivable that evidence as to that judicially denominated *trait* would not be admissible in every court-martial for the trial of any and every offense made punishable by Articles 78 and 80, 10 U.S.C.A. §§ 878, 880, through the specified and unspecified delicts of 134.[3] Such a conclusion would amount to historical revisionism at its worst and would wholly emasculate the general statement of Rule 404. It is nonsensical to declare as specific that which

has unlimited application, at the whim of an accused, to every trial no matter what offense was committed or under what circumstances. Yet that is the exact principle upon which *Clemons, Hewitt,* and *Angelini* are decided. It is one thing for a federal court to so declare. It is another for a military court, bound by the limits of a rule of evidence as drafted and intended, to so conclude when the history of that Rule's devolution points to the exact contrary. To conclude that law-abidingness is a specific trait under the Military Rules of Evidence is to ignore the mandate of Article 36(a), UCMJ, the provisions of Rules 101 and 404(a)(1), the historical synonymy within military law of that term with that of general character evidence, and the clear intent of the drafters of those Rules. In reality, it amounts to little more than an assertion of power to create a false judicial tautology in order to promote the move toward civilianization of the military justice system, even in the face of countervailing and impeaching evidence to the contrary.

As to *Clemons,* while confessing an absence of knowledge as to the exact substance of the specific evidence sought to be admitted, it can at least be legitimately argued that the military judge erred in refusing to admit, under the facts of that case, evidence of the *specific* trait of mili-

---

**3.** If one reads the concurring opinion of the Chief Judge in *Clemons,* he reaches this conclusion but considers it compelled by the plain language of the Rule as well as the implicit constitutional overtones which he sees as overshadowing the Rule. In my opinion, the plain language of the Rule, when considered in the context of its historical and legislative origins, compels a contrary conclusion. As to the latent constitutional issue addressed, this view obviously stems from the decision of the United States Supreme Court in *Edgington v. United States,* 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467 (1896), and *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), wherein the proposition is stated that good character evidence may alone be sufficient to generate a reasonable doubt as to guilt. In my opinion, the context in which that statement was made has been ignored. In *Edgington,* the Court was discussing error in the charge of the trial judge to the jury in which he instructed that the admitted evidence as to character was no proper basis for changing the verdict of the jury and

that if the jury found defendant guilty then evidence of good character was not a defense. The thrust of the charge was that character evidence should bear no weight in the deliberation of the jury on findings. Viewed in this background, the Court stated:

> The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing. 164 U.S. at 366 [17 S.Ct. at 74].

There is certainly no basis to conclude that the right to introduce general good character evidence is of constitutional dimension because of the possibility that such evidence may have some bearing on the reasonable doubt equation. *Michelson,* in referring to the above quoted portion of the opinion of *Edgington,* properly restricted it to being based on a failure to instruct the jury of its significance *in a proper case.* It might also be noted that both cases viewed the issue of admissibility of character evidence as being evidentiary, not constitutional, in nature.

tary character at issue—the performance of watch and/or security duties. This is authorized by 404(a)(1)—where pertinent. The term "pertinent" has been defined as "being synonymous with relevant." *Clemons*, 16 M.J. at 47. Clemons was performing a watch duty which required the exercise of certain defined responsibilities—as distinct from the general duty of all military personnel to obey the law. His defense was that his conduct was in fact a manifestation of the conscientiousness with which he pursued that duty. Therefore, character evidence which focused on the specific military trait of performance of watch duties should have been admitted—if so restricted.[4]

Following *Clemons* by about one year, and decided on the same day, were the cases of *United States v. Piatt*, 17 M.J. 442 (C.M.A.1984) and *United States v. McNeill*, 17 M.J. 451 (C.M.A.1984). In *Piatt*, the Court of Military Appeals held that the military judge erred in refusing to admit evidence of that accused's military character for the performance of duties imposed upon him as a drill instructor where the offense at issue alleged a malfeasance of those specific and prescribed duties. *McNeill* involved the same evidentiary link between the charges stemming from alleged abuse of specifically defined duties and the accused's character for proper performance of those same duties. The limitations evidenced in both *Piatt* and *McNeill* —as to the nexus required between the conduct charged and the pertinent military trait sought to be admitted as made both relevant and specific by the nature and circumstances of the charge—both seem to accord with the intended reach and boundaries of Rule 404(a)(1), Mil.R.Evid.

To proceed, however, from the logical relevance of military character evidence, admitted to exist under the facts in *Piatt* and *McNeill*, to an acceptance of the grounds stated for the decision in *United States v. Kahakauwila*, 19 M.J. 60 (C.M.A. 1984), requires an exercise that exceeds the bounds of legitimate rule interpretation. It amounts to nothing less than court rule-making. The accused in *Kahakauwila* was convicted of possession, transfer and sale of marijuana, charged as a violation of Article 92, UCMJ, 10 U.S.C.A. § 892, for a failure to obey a lawful general regulation, that being Article 1151, Navy Regulations. In addition to a general denial, that accused sought to bolster his credibility vis-a-vis that of the informant by introducing evidence of his "impeccable" military character. The military judge permitted testimony to be given concerning that accused's character for obedience, but rejected proffers of evidence of a testimonial nature that the accused's "work performance was excellent," that his "(military) appearance was outstanding." and that he was a "dependable" squad leader. Also rejected were offers of documentary evidence, being extracts from that accused's military record.

Building on the assumption that military members were subjected to close observation both on duty and during off duty hours—the latter assumption being questionable in this the age of off-base living— the Court of Military Appeals concluded, as it had previously in *Clemons, Piatt*, and *McNeill*, that evidence of conformance to military standards was relevant when trial

---

**4.** By "restricted" I mean simply that if the evidence merely went to show that *Clemons* had received a letter of commendation for exemplary appearance in a personnel inspection, I fail to see the relevance of that "award" to the issue of whether he was conscientiously performing his watch duty or was nothing more than a common thief. At some point, this type of military evidence becomes so attenuated in relation to the issue at trial that it loses all logical relevance—even though arguably evidence of military character. I must confess to having difficulty in understanding why a sailor who has the shiniest shoes on board ship carries with him almost a presumption that he will not, and can not, violate the law. A review of the evidence proffered in *United States v. Kahakauwila*, 19 M.J. 60 (C.M.A.1984), reveals that this "presumption" is no myth. In the context of the instant case, appellant asserts that a sailor with otherwise good military character does not use drugs. I would submit that one who possesses such character also does not become an unauthorized absentee for nine months—a fact which blemishes appellant's argument.

is held on offenses which are "military oriented." The initial assumption might be that the Court's use of the term "military oriented" was intended to be a concise statement of the drafters' sole exception in Rule 404(a)(1) that evidence of the specific trait of military character was admissible when pertinent. Not so. The Court in *Kahakauwila*, 19 M.J. at 62, held:

Here the offense of selling marihuana was charged as a violation of Naval regulations. Evidence of the accused's performance of military duties and overall military character was admissible to show that he conformed to the demands of military law and was not the sort of person who would have committed such an act in violation of regulations.

It becomes immediately self-evident that the Court, under the guise of filling in the interstices of a rule which, in light of its legislative history, is clear on its face to the contrary, marked its return to the pre-Rules law—military character evidence is always admissible in any case. The Court looked not to the nature of the offense—the possession, transfer and sale of marijuana—but *to the Article of the UCMJ chosen* as a vehicle *for charging* the criminal acts. It should require the exercise of minimal reasoning powers to realize that the rationale for charging a drug offense under Article 92, UCMJ, as a violation of Navy Regulations was one of convenience—not one of substantive or evidentiary import. The first two elements under Article 92—the existence of the regulation and an accused's duty to obey—are virtually *pro forma* elements, proven simply by judicial notice. The gravamen of the charge is the illegal possession and/or trafficking in drugs. This is the element on which litigation is directed. If the Court's decision did not mark a return to the rule of para. 138*f*, MCM, 1969, then it most assuredly erected, as the test for determining whether military character evidence was admissible, the articulation by pleading with which an offense was charged.

This is elevation of myth over reality in its purest form. It ignores the substantive nature of the offense and focuses strictly on the vagaries of drafting a charge. The technical art of pleading is resurrected once again; the "ancient rigor of old common-law rules of criminal pleading" refuses to yield. The untenable conclusion to be reached is that a drafter, by choosing the manner of pleading an offense, can either grant or deny to an accused the right to introduce evidence of military character as a defense—regardless of the nature of the crime committed. If the accused in *Kahakauwila* had been charged under Article 112a, UCMJ, 10 U.S.C.A. § 912a, as now required, the proffered evidence could not be held admissible under the standard set forth in that case. The same result would have obtained had the charge been laid under Article 134, as a violation of a federal statute. Under either of these two methods of pleading a drug offense, the only way such evidence could be admissible would be to return to the law of para. 138*f*, MCM, 1969—a law which was specifically and unequivocally rejected by the President in promulgating Rule 404(a)(1), Mil.R.Evid.

That the method of pleading has apparently, at least in the mind of the military bar which must interpret court decisions, become the *sine qua non* which governs the admissibility of military character evidence is made evident by the instant case. Appellant has argued before this Court that, because he was charged under Article 134, UCMJ, which contains the requirement that the offense constitute conduct prejudicial to good order and discipline, evidence of military character is *a fortiori* admissible to show that appellant's character in the past conformed to standards of good order and discipline. I agree without reservation with the observation made by the majority on this point—that "(t)his element, common to all general article offenses, has nothing to do with whether or not the appellant committed the offense; rather, it is solely related to the factual character of the misconduct alleged, whether or not committed by the appellant." The point, however, which remains to be focused upon is that the pronouncement in *Kahakauwila* —which ties admissibility to the method of

pleading and not to the nature of the offense—is the genesis of this suggested nexus deemed to exist between the ultimate element of *any* Article 134 offense and the admissibility of military character evidence. In my view, the trend established by *Kahakauwila* mirrors that which we have witnessed on the issue of multiplicity for findings—the law is what the Court of Military Appeals says, regardless of the clear indications to the contrary by Congress and the President.

A separate ground urged by appellant before this Court for permitting military character evidence—*without regard to the manner of pleading*—suggests that such evidence should be admitted for no other reason than that appellant's misconduct was detected by urinalysis. This purports to add a different dimension of exception to the general rule excluding general character evidence. Now the method of *detection* becomes the linch-pin upon which the issue of admissibility hangs. The following illogical scenario is thus created: An accused is observed using marijuana. As a result, he is ordered to submit to a urinalysis based on probable cause. At trial, the Government chooses to prove the offense by both the testimony of the observer and the results of the urinalysis. Under appellant's theory, an accused would be permitted to introduce evidence of his military character because the Government's proof involves laboratory reports. If, on the other hand, the Government chose to rely solely on the observer's testimony, the accused would be denied the right to extend his evidence in defense to include that of military character. Now the prosecutor, not the pleader as in *Kahakauwila*—and certainly not the nature of the offense—is the determinator of admissibility. Would that accused, in such a situation, have an enforceable right to require the Government to introduce the evidence of urinalysis so as to then create the threshold requirement for his (accused's) ability to lay before the trier of fact evidence of military character? If so, the railroad is being run by the wrong engineer. If not, the Government, not the defense, controls the reach of defense evidence. Neither result is to be countenanced in any respectable system of law.

It has also been suggested that the stated *defense theory* of the case—not the nature of the offense or the defenses recognized by law which apply to that offense—is the controlling factor in determining the admissibility of military character evidence. If this be so, then it is naive to suggest that the proffered defense theory of *every* case will not always be that the accused is a law-abiding person, that law-abiding persons do not commit offenses, therefore the accused did not commit the offense. If this be the law, we have already returned to the pre-Rules law, for the Court of Military Appeals evidently sees no distinction between law-abidingness and general character. Under the "defense theory of the case" concept, this simply means that in the final analysis and at the whim of defense counsel—for it certainly requires no novelty in tactics or even a marginal understanding of the facts of the case—any and all evidence admitted under para. 138*f* would be admissible at any time under Rule 404(a)(1). While I agree that there exists no distinction between law-abidingness and general character, I depart from any suggestion that either is admissible, or is intended by the drafters to be admissible, under Rule 404(a)(1).

For the reasons stated above, I conclude that appellant in the instant case was precluded, by Rule 404(a)(1), from introducing evidence of his military character as matters in defense of a charge of using cocaine. I would so conclude regardless of the manner in which the offense was pleaded, or the method by which his use was detected, or the novelty by which the defense theory is propounded. If any error was committed by the military judge, it was in permitting evidence to be admitted of appellant's purported character for law-abidingness, which, under military law, is synonymous with general character and thus inadmissible under Rule 404(a)(1).

This, however, does not end the inquiry for, even assuming that the intent of Rule 404(a)(1) has been so perniciously emasculated as to now permit the whole-scale admissibility of general character evidence—military or otherwise—in any court-martial for any offense, the *methods* by which such proof can be made still remain subject to some degree of control. The Court of Military Appeals in *Kahakauwila* found error in the refusal of the military judge to permit the introduction of not only testimonial evidence but also service record evidence stated as being relevant to the offenses. Such an extension would appear to be wholly inconsistent with the limitations on methods of proof contained within Rule 405, Mil.R.Evid., which provides:

(a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of an offense or defense, proof may also be made of specific instances of the person's conduct.

(c) Affidavits. The defense may introduce affidavits or other written statements of persons other than the accused concerning the character of the accused....

Under section (a), the methods permitted to prove character—or a specific trait of character—are restricted to testimonial evidence by way of reputation for, or opinion of, that character or trait. Service record documents do not come within the definition of either restriction. Section (b) had no application in *Kahakauwila* and has none in the instant case. Section (c) permits the use of affidavits or other written statements of persons concerning the accused's character. An affidavit must, by definition, be under oath. The use of affi-

davits or other written statements must also conform to, and be limited by, the restriction of section (a)—their content may only extend to reputation or opinion evidence of the character trait in issue. I would suggest that the drafters of Rule 405(c) would reject out of hand any interpretation of that Rule which equated service record documents—such as enlisted classification records, letters of appreciation for a job well done, or performance and fitness reports—with "other written statements." The phrase "affidavits and other written statements" comes from para. 146*b*, MCM, 1969. The history of this particular provision when read in conjunction with that of para. 138*f* reveals the following: Under the Manual for Courts-Martial, 1951, para. 138*f* provided that an accused could introduce evidence of his military record and standing. It did not authorize, in specific terms, the introduction of efficiency reports and similar service record documents. In *United States v. Barnhill*, 13 USCMA 647, 33 CMR 179 (1963), the Court of Military Appeals, when faced with deciding whether efficiency reports were admissible under para. 138*f*, concluded:

Indeed, it is difficult to conceive of a better or more reliable means of establishing the accused's actual "military record and standing" than by his efficiency reports.

*Barnhill*, 33 CMR at 182. The Court specifically declined to decide whether the term "other written statements" as contained in para. 146*b* would itself authorize the introduction of efficiency reports as evidence on the merits of a case. *See Barnhill*, 33 CMR at 182 (n. 1). When the 1969 Manual for Courts-Martial was drafted, the intention of the drafters was clearly expressed. Citing *Barnhill*, they added a clause to para. 138*f* which, in their words, "pointed out that authenticated copies of efficiency or fitness reports of the accused are admissible on the issue of his good character." [5] The obvious inference is that

---

5. *See* Analysis of Contents, *Manual for Courts-Martial, 1969 (Rev.),* at 27–4. DOA PAM No. 27–2.

 

the drafters chose to expand the reach of para. 138*f* to incorporate as part of military jurisprudence the decision of *Barnhill* rather than to redefine—or permit the interpretation that they so intended a redefinition of—the term "other written statements" as contained solely in para. 146*b* so as to include efficiency or fitness reports. Further, it is to be noted that the analysis to Rule 405(c), Mil.R.Evid., refers solely to para. 146*b* —not to para. 138*f*—as its source. This is clear evidence that the term "other written statements" as employed in Rule 405(c) does not include efficiency or fitness reports—or other similar service record documents.

Given this background, it cannot be maintained by any legitimate interpretation of Rule 405 that the exhibits sought to be introduced by appellant came within the terms "reputation testimony", "opinion testimony", "affidavits" or "other written statements." As such, then regardless of how Rule 404(a)(1) is interpreted, Rule 405 sustains the ruling of the military judge in rejecting the performance evaluations proffered by appellant on the merits.[6] Further, I am patently unable and unwilling to extend the word "relevant" to include, as evidence of appellant's motivation to avoid disciplinary problems, a report of a requested hardship discharge (offered as Defense Exhibit B) which had been denied in 1982. Especially is this true where, by appellant's own admission, he submitted the request prior to commencing a nine-month unauthorized absence for which he had been previously convicted by special court-martial.

I have written at great length on the issue presented to this Court for decision because I fear for the stability and soundness of the future of military law and its administration when rules of evidence and other procedural and substantive pronouncements issuing from Congress and the President are disregarded and, in their stead, are erected rules based on the personal predilections and proclivities of judges. Congress and the President, in the drafting and promulgating of the Uniform Code of Military Justice and the Manual for Courts-Martial, determined that certain rules applicable to the federal system should not be adopted as part of military law and procedure. That delicate balance should not be disturbed by a court by judicial rule-making and legislation via the convenient device of court decision. Article III courts are not at liberty to pick and choose which rules—or parts of rules—they desire to follow and which to discard. All the more so should such limitation be imposed upon, and restraint exercised by, a court formed under Article I of the Constitution as a quasi-administrative body, possessing no inherent power.

I concur in the judgment of the majority that the military judge did not err in refusing to admit the questioned evidence and that appellant has not been prejudiced by the rulings. Accordingly, I join in affirming the findings and sentence.

---

6. I would also conclude that the evidence of appellant's law-abidingness was inadmissible because such "trait" in the equivalent of general character—not a specific trait—which is prohibited by Rule 404, and that the testimonial evidence going to appellant's character for veracity was prematurely admitted as appellant had not yet, by taking the stand as a witness in his own defense, placed in issue his character for such trait. Rule 608(a), Mil.R.Evid.