**UNITED STATES**

v.

**Captain Charles W. COURT, Jr., 450–82–8799 FR, United States Air Force.**

**ACM 24200.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 20 Oct. 1983.

Decided 27 June 1984.

Appellate Counsel for the Accused: Mr. Jack B. Zimmermann and Mr. Clinard J. Hanby, Houston, Texas. Colonel Leo L. Sergi and Captain Kathleen G. O'Reilly.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major Robert E. Ferencik, Jr.

Before FORAY, SNYDER and O'HAIR, Appellate Military Judges.

## DECISION

O'HAIR, Judge:

Tried by a general court-martial with members, the accused was charged with committing an indecent assault on BC, in violation of Article 134, 10 U.S.C. § 934 (Charge I), attempted rape of BC, in violation of Article 80, 10 U.S.C. § 880 (Charge II), and two identical indecent assault and attempted rape specifications under Article 133, 10 U.S.C. § 933, as conduct unbecoming an officer and a gentleman (Additional Charge). Contrary to his pleas, he was found guilty of the two indecent assault specifications, and, by exceptions and substitutions, not guilty of attempted rape, but guilty of indecent assault, under both Articles 134 and 133. He was sentenced to be dismissed from the service, to be confined at hard labor for six months and to forfeit all pay and allowances. On appeal the accused has assigned five errors, each of which will be addressed below.

The offenses occurred at the culmination of an evening of socializing, eating and drinking at a progressive dinner party attended by the accused, the victim (BC), and other members of the accused's flight. BC had recently arrived at Kadena Air Base, Okinawa, Japan, and although her husband was not a member of the accused's flight, she was invited to attend the dinner party alone because her husband was away on temporary duty. BC agreed to attend this dinner party because it would give her an opportunity to meet many of the people in her husband's squadron. BC had met the accused 8½ years before when he was her husband's roommate at Officer Training School. Both men were later stationed at Shaw Air Force Base, although in different units. She did not consider the accused a close, personal friend of her or her husband, although they did enjoy a speaking acquaintanceship.

On the evening in question, BC initially encountered the accused at the first of the three homes hosting the dinner. At this home the accused drank a number of glasses of margarita punch and was drinking alcoholic beverages for the next several hours. BC indicated she had no more than two glasses of the punch. There was testimony that by the end of the evening the accused had become boisterous, loud and rowdy, but in control of himself. During the party's progress, BC and the accused engaged in several casual conversations, danced one slow dance together, and walked together between the first and second houses, as well as the second and third houses. While walking they sometimes had their arms around each other, at other times they were holding hands, and once the accused kissed her. BC explained that she found these displays of affection by the accused to be uncomfortable and unsolicited; however, because of her unfamiliarity with this group of people she tolerated this behavior as she did not want to create a

spectacle by conspicuously shunning the accused's aggressiveness.

The conduct serving as the basis for these charges occurred after BC accepted the accused's offer to walk her the few blocks to her home where her and another family's children were being cared for by a babysitter. As the two reached her house, the accused directed her to some Japanese tombs across the street from her house. There he pulled her up the several levels of two to two and one half foot tall stone blocks. While still holding on to her, he proceeded to kiss her, pull the side of her sundress down to her waist, caress and bite her breasts, and finally he placed her hand on his penis. BC said she physically resisted his advances and was finally able to free herself from his grasp and jump down from the tombs. The accused then quickly followed her and apologized profusely. Rather than immediately run to her house, BC decided to go to the home of one of the party participants to retrieve her purse containing her house keys. The accused accompanied her there and when they found the occupant was not home yet, the accused offered to drive her back to the party, as his car was parked nearby. She had accepted the accused's apologies and believed she need not be concerned about any further amorous advances by him. Once in his car, he again tried to kiss her and also succeeded in putting his hand under her dress, pulling down the front of her pantyhose and inserting a finger in her vagina. After vigorously resisting this behavior, BC managed to open the car door and escape. She resumed her trip to retrieve her purse and shortly thereafter she was seen by two ladies who were driving home from the party. She accepted their offer of a ride and they immediately observed that she was hysterical and having difficulty catching her breath. They took her to one of their homes where she settled down somewhat and informed them she "almost got raped."

At trial the accused relied on an intoxication defense and alcoholic amnesia. He testified that the only events that he could remember after leaving the party with BC were the two of them french kissing at the tombs and her gently removing his hands from her breasts.

The tombs encounter served as the basis for the charge of indecent assault under Article 134 and conduct unbecoming an officer under Article 133, whereas the encounter in the car was charged as attempted rape, Article 80 and conduct unbecoming an officer under Article 133. The military judge provided the traditional instructions for the charged offenses, as well as instructing that committing indecent, lewd and lascivious acts was a lesser included offense (LIO) of indecent assault (tombs incident) and that both indecent assault and committing indecent, lewd and lascivious acts were LIOs of the attempted rape (car incident). Sample findings for each of the LIOs were prepared by the government and given to the court members with the findings worksheet.

I

■ A mistake of fact instruction was not given to the members, nor was one requested. In fact, this issue was raised for the first time on appeal. The accused now asserts that the military judge erred by not *sua sponte* providing an instruction on mistake of fact, one that would have required the court to find the accused not guilty unless they were convinced beyond a reasonable doubt that the accused did not honestly and reasonably believe BC consented to his sexual advances. This area of the law is unsettled and, although it is frequently raised, there is no military authority for the general proposition that mistake of fact can be a defense to a charge of rape or indecent assault. In most instances where appellants have raised such a defense on appeal, the courts have effectively skirted the issue by surmising that the evidence presented at trial did not raise the issue of mistake of fact. Given that, the failure to give the instruction was harmless; and we hold the same in this case. *United States v. Mahone*, 14 M.J. 521 (A.F.C.M.R.1982); *United States v.*

*Perry,* 12 M.J. 920 (N.M.C.M.R.1982); *United States v. Keeve,* 2 M.J. 290 (A.F.C. M.R.1976).

The victim in this case, admittedly, acted naively and without good sense with regard to her interactions with the accused during and after the dinner, but nowhere do we find that she even hinted or suggested that she would or did consent to the sexual advances proffered by the accused. The bulk of their contacts that evening were socially acceptable party interactions among friends, acts which do not traditionally convey a message of consent to future intimate contacts. Indeed, even the accused did not testify that he had the consent of the victim. As a result of his voluntary intoxication he remembers very little of his activities in the latter part of the evening. We conclude, therefore, that the facts of the case fall short of suggesting that the accused may have mistakenly believed BC consented to his sexual advances. As a result, the military judge did not err in not *sua sponte* giving a mistake of fact instruction.

## II

■ Pursuant to a government motion *in limine,* the military judge precluded the defense from presenting evidence of the accused's good military character. The military judge relied on the interpretation of Military Rules of Evidence, Rule 404(a),* as found in *United States v. Belz,* 14 M.J. 601 (A.F.C.M.R.1982), and *United States v. Cooper,* 11 M.J. 815 (A.F.C.M.R.1981). Those cases interpret Rule 404(a) as permitting the introduction before findings of evidence of the good military character of an accused only in those situations where it is pertinent to the charges before the court. Using the test set out in *Cooper, supra,* the admission of the specific character trait in question must demonstrate the accused would have been less likely to commit the offense charged. Of course, the greater

the military nature of the charged misconduct, the more pertinent good military character becomes. In the case before us we find the accused charged with sex offenses against a dependent wife; and we do not consider his military character to be a pertinent character trait which would be useful to the court members in deciding guilt or innocence. Evidence of the good military character of the accused would not demonstrate that he would have been less likely to commit the charged sex offenses. Accordingly, we find the military judge acted correctly in granting the government's motion.

■ Even though the introduction of evidence of good military character was technically excluded before findings, the trial defense counsel was permitted to introduce an abundance of character and opinion testimony regarding the accused's excellent reputation for being a law abiding citizen, not being physically aggressive toward women, and for being truthful and trustworthy. It is also noteworthy that some of this testimony came from the accused's present and former commanders. Through these witnesses the defense was also able to inform the court about the assignment history of the accused, to include the fact he served an Air Staff Training Assignment (ASTRA) at the Pentagon. Therefore, despite the military judge's ruling, the witnesses were permitted, indirectly, to provide some significant evidence of the accused's good military character.

## III

■ The next assertion of error addresses the appropriateness of government rebuttal on findings to a defense character witness. The defense counsel asked the witness if the accused was *physically* aggressive toward women. The witness' response was, "He is not aggressive toward women." Trial counsel was then permitted

---

* Military Rules of Evidence, Rule 404(a) *Character evidence generally.* Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except: (1) *Character of the accused.* Evidence of a pertinent trait of the character of the accused offered by an accused, or by the prosecution to rebut the same.

to present rebuttal testimony that the accused had a reputation in the community for being "very fast with women and it doesn't matter whether they are attached or unattached" and "it doesn't matter whether they are willing or unwilling." It is conceded that the prosecution may rebut favorable character evidence introduced by the defense. *United States v. Tomchek*, 4 M.J. 66 (C.M.A.1977). However, appellate defense counsel complain that the response to the defense counsel's question regarding physical aggressiveness toward women was non-responsive and therefore non-rebuttable by the prosecution. We decline to so hold. As a result of careful pretrial preparation the counsel for each side presumably couch or phrase their questions to witnesses in a format which will elicit the response anticipated. If these questions are not so formulated, or if the witness replies in an unexpected manner, it is too late for the surprised counsel to retract the question. Applying that reasoning to the situation before us, we find the prosecution was at liberty to rebut character testimony that the accused was not aggressive toward women. Furthermore, it is certainly arguable that even if the defense witness had responded as counsel expected, the answer would have opened the door to government rebuttal.

## IV

■ Appellate defense counsel next assert that the specifications of Charges I and II (Articles 80 and 134) are multiplicious for findings purposes with the two specifications of the Additional Charge (Article 133). Such charging is authorized by Paragraph 212, Manual for Courts-Martial, United States, 1969, (Rev. edition). *See also United States v. Sheehan*, 15 M.J. 724 (A.C.M.R.1983) and *United States v. Clark*, 15 M.J. 594 (A.C.M.R.1983).

## V

■ As stated above, the court members were appropriately instructed on the elements of the offense of attempted rape, as well as the LIOs of indecent assault and indecent acts. To assist the court members during their deliberations on findings, the military judge provided them with a findings worksheet which included a sample format of the LIOs instructed upon. It was noted for the first time on appeal that the wording on the worksheet for the LIO of indecent assault failed to include the necessary language showing that the accused had, at the time of the indecent acts, the specific intent to gratify his lust or sexual desires. The government would have us believe we can ascertain the court members' intention here by examining the record and that it is unrealistic to expect laymen to be aware of the need for precise terminology. We decline to so hold in this case. Irregularities or technical inaccuracies in the court members' findings by exceptions and substitutions can be expected on the basis that laymen cannot be expected to be knowledgeable of, and exactly comply with, the need for precise terminology in the findings. *United States v. Graham*, 36 C.M.R. 945 (A.F.B.R.1966); *United States v. Cameron*, 34 C.M.R. 913 (A.F. B.R.1964). We are unwilling to apply that philosophy in the situation before us where the government-supplied findings worksheet was deficient. Accordingly, absent a specific finding that the accused had the specific intent to gratify his lust or sexual desires, we can only affirm a finding that the accused committed indecent and lewd acts with BC. *United States v. Jackson*, 31 C.M.R. 738 (A.F.B.R.1962).

Consistent with the above, only so much of the findings of guilty of the Specification, Charge II and Specification 2 of the Additional Charge as finds the accused did, on or about 20 August 1983, wrongfully commit indecent, lewd, and lascivious acts with BC by placing his hand on her genital area and penetrating her vagina with his finger, in violation of Article 134 and Article 133, is affirmed.

We have reassessed the sentence in light of the above action and find it nonetheless appropriate. The findings, as modified, and the sentence are

AFFIRMED.

FORAY, Senior Judge and SNYDER, Judge, concurring.