**UNITED STATES, Appellee,**

v.

**Charles W. COURT, Jr., Captain, U.S. Air Force, Appellant.**

No. 50,414.
ACM 24200.

U.S. Court of Military Appeals.

April 20, 1987.

For Appellant: *Jack B. Zimmermann,* Esq. (argued); *Clinard J. Hanby,* Esq., *Colonel Leo L. Sergi, Major Kathleen G. O'Reilly* (on brief); *Captain Laurence M. Soybel* and *Captain Deborah J. Hudspeth.*

For Appellee: *Lieutenant Colonel Robert E. Giovagnoni* (argued); *Colonel Kenneth R. Rengert* and *Major Robert E. Ferencik, Jr.* (on brief); *Colonel Joe R. Lamport* and *Colonel Andrew J. Adams, Jr.*

*Opinion of the Court*

EVERETT, Chief Judge:

As a result of an incident that occurred at Ishikawa, Japan, on August 20, 1983, appellant now stands convicted by general court-martial of indecent assault on Betty Copeland and committing indecent, lewd, and lascivious acts on her, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, as well as of conduct unbecoming an officer and a gentleman, in violation of Article 133, UCMJ, 10 U.S.C. § 933. The approved findings as to the alleged unbecoming conduct encompass the allegations of the indecent-assault and inde-

cent-acts specifications.[1] Appellant's sentence as adjudged by the members and approved on appellate review, 18 M.J. 724 (A.F.C.M.R. 1984), was dismissal, confinement for 6 months, and total forfeitures. We granted review. 19 M.J. 145 (1984).

Appellant contends that the indecent-assault and committing-indecent-acts specifications are multiplicious for findings with the specifications alleging conduct unbecoming an officer by committing the indecent assault and indecent acts. He also complains that, in defending on the merits, he was improperly restricted from introducing evidence of his good military character. We agree in both respects.

### I

■ In *United States v. Timberlake*, 18 M.J. 371, 375 (C.M.A. 1984), we held that "where the underlying conduct required for conviction under Article 133 is ... [a crime] defined by ... [a specific punitive article], we conclude Congress intended ... [the specific crime] to be a lesser-included offense of conduct unbecoming an officer." The same principle applies when the act alleged under Article 133 is the same as an act alleged under Article 134. *United States v. Rodriquez*, 18 M.J. 363 (C.M.A. 1984). Accordingly, the specifications alleging indecent assault and indecent acts are multiplicious for findings with the specifications alleging that Court committed conduct unbecoming an officer by committing the assault and indecent acts. Therefore, the specifications under Article 134 (Charges I and II) cannot coexist with those under Article 133 (Additional Charge).

### II

Appellant's evidentiary claim requires consideration of the facts. According to all the evidence, members of appellant's unit had joined on the evening in question in a "progressive Mexican [dinner] party."[2] The alleged victim's husband was newly assigned to the base; and, although he was away on temporary duty, she had been invited to attend the party alone so that she might meet some of the people in her husband's squadron. She and Court had first met over 8 years before, when he and her husband were roommates at Officers Training School. Although she did not consider appellant a close personal friend, they were at least speaking acquaintances.

In general, the prosecution established through her testimony that, during the evening, Court had made three "passes" at her, two involving intimate physical contact which she verbally and physically resisted.[3] The Government's case was buttressed by photographs taken shortly after the incident, showing bruises on parts of her body where appellant had touched her. Moreover, two women testified that they also had been at the party and had come upon her as she fled from appellant after his last advance. They described her as emotionally upset, out-of-breath, and complaining that she "almost got raped."

In response, the defense relied on an intoxication defense and on alcoholic amnesia. The evidence indicated that over several hours Court had drunk a considerable

---

1. Initially, appellant was charged with attempted rape and indecent assault, in violation of Articles 80 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 934, respectively. An additional charge was preferred under Article 133, UCMJ, 10 U.S.C. § 933, and consisted of two specifications which alleged as unbecoming conduct the same attempted rape and indecent assault. The court-martial members found appellant guilty of the indecent assault but purported to reduce the attempted rape to the lesser-included offense of indecent assault—with a conforming change in the parallel specification under Article 133. However, because of an error in making the exceptions and substitutions,

the Court of Military Review later held that, in legal effect, the court-martial members had only found Court guilty of committing indecent acts. *See* 18 M.J. 724 (A.F.C.M.R. 1984).

2. Apparently, in a "progressive" dinner party, the participants meet for appetizers at the home of one of their number, for the main course at the home of another, and for dessert and coffee at the home of yet another.

3. The events which occurred that evening are described in more detail in the opinion below. *Id.* at 725–26.

amount of alcohol at the party and that he had become loud and boisterous, although remaining in control of himself. Appellant testified that all he could remember from the later part of the evening was one occasion when the two had mutually engaged in "French kissing," during which she had gently removed his hand from her breasts. He swore that, although he could not specifically remember much of what had occurred that evening, it would have been totally out of character and contrary to his principles for him to have forced himself on any woman who indicated to him that his sexual advances were unwelcome.

Others who had attended the party indicated that the alleged victim had appeared receptive to Court's physical contacts earlier in the evening and, indeed, apparently had initiated some of her own. Moreover, the defense presented an impressive amount of testimony concerning Court's excellent reputation for being a law-abiding citizen, absolutely truthful and fully trustworthy, and not physically aggressive toward women—all in an effort to convince the members that he was not the sort of person who would ignore a woman's resistance to his amorous overtures.

Some of this character evidence came from appellant's current and past commanders. The same witnesses also described some of his important assignments, including his service in an Air Staff Training post at the Pentagon. Pointing to this evidence about his military assignments, the Court of Military Review stated that "the witnesses were permitted, indirectly, to provide some significant evidence of the accused's good military character." *Id.* at 727.

A

The problem is that appellant was precluded by the military judge from presenting additional, *direct* evidence of his good military character. At a session pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), prior to the trial, assistant trial counsel "move[d] *in limine* to exclude good military character on the findings portion of

the trial, based on *United States v. Cooper* [, 11 M.J. 815 (A.F.C.M.R. 1981),] and *United States v. Belz* [, 14 M.J. 601 (A.F.C.M.R. 1982), *set aside*, 20 M.J. 33 (C.M.A. 1985) ]." Explaining his motion, the prosecutor noted that many of appellant's requested witnesses "were requested [in order] to testify to his military proficiency." Arguing that *Cooper* and *Belz* permitted such evidence "to come into issue and be sustained on the findings portion of the trial" only when "the gravamen of the offense ... [is] a purely military type offense," assistant trial counsel insisted that appellant stood charged with offenses whose gravamen was not of this nature.

In reply, defense counsel pointed out that two of the specifications alleged conduct unbecoming an officer and that, accordingly, appellant's "record of military proficiency, his integrity both as an officer and as a member of the community are in question here." Further, he argued that, inasmuch as the other charges alleged the same acts upon which the charge of conduct unbecoming an officer was based, "Captain Court's record for military proficiency, duty performance, and his conduct as an officer" were also admissible as to those offenses. The prosecutor responded that "the mere charging of an offense under Article 133 does not place an accused's good military character into issue."

Observing that the alleged offenses occurred off-duty and off-base, did not involve a subordinate as a victim, and did not occur during an official unit party, the military judge granted the Government's motion *in limine*. Apparently in reference to *Cooper* and *Belz* as well as to Mil.R.Evid. 404(a), Manual for Courts-Martial, United States, 1969 (Revised edition), he explained, "I really don't have any option."

B

Generally, "[e]vidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion." Mil.R.Evid. 404(a). Nevertheless, "[e]vidence of a *per-*

*tinent trait* of the character of the accused offered by an accused, or by the prosecution to rebut the same," is admissible for this purpose. Mil.R.Evid. 404(a)(1).(emphasis added).

Clearly, good military character is a character trait within the meaning of Mil.R. Evid. 404(a)(1). *United States v. Clemons*, 16 M.J. 44 (C.M.A. 1983). *Accord, e.g., United States v. McNeill*, 17 M.J. 451 (C.M.A. 1984); *United States v. Piatt*, 17 M.J. 442 (C.M.A. 1984).[4] The drafters of Mil.R.Evid. 404(a) clearly intended that good military character be considered a "pertinent trait" in some cases. *See* App. 18, Drafter's Analysis, Manual, *supra*. The more difficult question in most cases, and the one most frequently presented in connection with this rule, is whether a specific character trait is "pertinent" in a particular trial—that is, whether the character trait is one which "is directed to the issue or matters in dispute, and legitimately tends to prove the allegations of the party offering it." *United States v. Elliott*, 23 M.J. 1, 5 (C.M.A. 1986), quoting from *Black's Law Dictionary* 1030 (5th ed. 1979).

As we commented in *United States v. Vandelinder*, 20 M.J. 41, 44 (C.M.A. 1985): "We agree that admissibility of this character evidence in a drug case should not hinge on whether the prosecution is under Article 92[, UCMJ, 10 U.S.C. § 892]; Article 134; or the recently enacted Article 112 a, UCMJ, 10 U.S.C. § 912a." It is the substance of the alleged misconduct which is pivotal to a determination whether such evidence is "pertinent."

Thus, in *United States v. Belz*, 20 M.J. 33 (C.M.A. 1985), we held that evidence of the accused officer's good military character was admissible on the merits in defense of a charge "of conduct unbecoming an officer by engaging in various drug-related

acts, in violation of Article 133." Since this Court had held similar evidence admissible under Mil.R.Evid. 404(a)(1) where a drug-related charge was prosecuted under Article 134, "Article 92, ... or the recently enacted Article 112a,"[5] we saw "no reason why officers charged with drug offenses under Article 133 should be barred from introducing such military character evidence." 20 M.J. at 34.

The opinion in *Belz* made no mention of a broad view that, solely by virtue of being charged with conduct unbecoming an officer under Article 133, evidence of good military character was, ipso facto, "pertinent." Instead, the clearly implied rationale of the holding there was the same as that which underpinned the opinions in *Vandelinder* and *United States v. Kahakauwila*, 19 M.J. 60 (C.M.A. 1984): "[A] factfinder could reasonably infer that a person of 'good military character' would be unlikely to participate in an activity that is so harmful to military effectiveness." 20 M.J. at 45.

■ We recognize, however, that a prosecution under Article 133 has certain unique characteristics. Originally, Congress believed that a military officer who had engaged in conduct unbecoming an officer and a gentleman should be dismissed from the service; and so Article of War 95, the predecessor of Article 133 of the Uniform Code, made dismissal mandatory for unbecoming conduct. *See United States v. Timberlake*, 18 M.J. at 377 (Everett, C.J., concurring). Consistent with this history, our precedents require that, for convictions under Article 133, "the [offending] conduct must ... be shown to dishonor the individual" and to "seriously compromise his standing as an officer." *Id.* at 375.

Some might argue persuasively that commission of *any* crime by an officer constitutes conduct unbecoming an officer and a

---

4. For a general discussion of the precedents, *see* Smith, *Military Rule of Evidence 404(a)(1): An Unsuccessful Attempt to Limit the Introduction of Character Evidence on the Merits,* 33 Fed. Bar News & Journal 429 (Dec. 1986).

5. *See United States v. Kahakauwila,* 19 M.J. 60 (C.M.A. 1984).

gentleman.[6] The fact remains, however, that an Article 133 prosecution requires that the court-martial be instructed and be convinced beyond a reasonable doubt as to a separate element—namely, that the conduct was unbecoming an officer. Thus, in a prosecution under Article 133, an accused officer may defend on two grounds—(a) that the alleged conduct did not occur and (b) that, even if it occurred, it was not "unbecoming" within the meaning of Article 133.

■ In a prosecution under Article 133—as in many other cases—evidence of an officer's good military character may be relevant in showing that such a person would never engage in the charged conduct. It also may be relevant to the element which is unique to Article 133. It provides a basis for the factfinder to infer that the charged conduct was not "unbecoming" because an officer of such fine character would never do anything that would seriously compromise his standing as an officer.[7]

■ We agree with defense counsel's argument at trial that appellant's "integrity both as an officer and as a member of the community are in question here." Therefore, in addition to presenting whatever other evidence was available to show that he did not commit the alleged indecent assault or attempted rape, appellant was entitled to argue—and to present evidence in support of such a position—that he was such an outstanding officer that, by virtue of this fact alone, a factfinder could infer that he would not have engaged in activity unbecoming an officer and a gentleman.

### C

Even though the military judge erred in not permitting appellant to introduce evidence of his good military character as

substantive evidence in his defense, Court was not necessarily prejudiced by this error. *United States v. Weeks*, 20 M.J. 22 (C.M.A. 1985); *see United States v. Vandelinder*, 20 M.J. 41. The analysis for determining prejudice, as set forth by Judge Cox in *Weeks*, is:

First: Is the Government's case against the accused strong and conclusive?

Second: Is the defense's theory of the case feeble or implausible?

Third: What is the materiality of the proffered testimony? Is the question whether or not the accused was the type of person who would engage in the alleged criminal conduct fairly raised by the Government's theory of the case or by the defense?

Fourth: What is the quality of the proferred defense evidence and is there any substitute for it in the record of trial?

20 M.J. at 25 (citations omitted).

At the time of its decision in this case, the Court of Military Review did not reach the issue of prejudice because, in line with its decision in *Belz*—which had not yet been reversed by us—it concluded that there had been no error. Under the circumstances here, where the evidence erroneously excluded was evidence of good military character, it seems appropriate that the Court of Military Review—which is composed of senior military officers—be provided an opportunity to consider prejudice in light of the *Weeks* analysis. Therefore, a remand is in order so that court may determine whether appellant was prejudiced.

### III

The decision of the United States Air Force Court of Military Review is reversed as to Charges I and II and their specifica-

---

6. This position would parallel the view that any misconduct of an officer is service-connected. *Cf. United States v. Scott*, 21 M.J. 345, 350 (C.M.A. 1986) (Cox, J., concurring).

7. We express no opinion whether such evidence might always be pertinent to an officer's defense

against a charged violation of *any* punitive article—again on the theory that, considering the high standards of conduct and performance expected of an officer, one of such demonstrated high quality would not have engaged in activity so inimical to that status.

tions. The findings of guilty thereon are set aside and those Charges and specifications are dismissed. In all other respects the decision below is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court for findings of fact and conclusions of law on whether appellant was prejudiced by the evidentiary error. If that court finds no prejudice, it will then take appropriate action as to the sentence in light of the multiplicity error.

Judge SULLIVAN concurs.

COX, Judge (concurring in part and dissenting in part):

I agree with the majority opinion regarding the multiplicity of the specifications. I further agree that evidence of appellant's military record and military character should have been admitted. I do so without hesitation because, in my judgment, the fact that a person has given good, honorable, and decent service to his country is *always* important and relevant evidence for the triers of fact to consider. Commanders consider it not only when deciding the appropriate disposition of a charge, but also when deciding to approve or disapprove sentences; and I believe that court members and military judges also should consider it when deciding whether a particular person is innocent or guilty of an offense. The evidence may have little weight; indeed, it may have none. But if an individual has enjoyed a reputation for being a good officer or servicemember, that information should be allowed into evidence. *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Weeks*, 20 M.J. 22 (C.M.A. 1985).

The question of whether this appellant was prejudiced by exclusion of such evidence is quite another matter. I agree that the question of prejudice should be decided by applying the *Weeks* "four-pronged analysis to test for prejudice." *Id.* at 25 (footnote omitted); *cf. Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).[1] I really do not quarrel with the judgment of the majority that usually "senior military officers" on the Court of Military Review should be given the opportunity to perform the *Weeks* analysis. However, because I believe the case before us so easily lends itself to our conducting the *Weeks* test for prejudice ourselves, I see no need to remand it to the court below. We should take care of it here, applying that test as follows (20 M.J. at 25):

First: Is the Government's case against the accused strong and conclusive?

Yes. The victim's testimony was corroborated by physical evidence of bruising and the testimony of witnesses who found her in an hysterical state shortly after the incident.

Second: Is the defense's theory of the case feeble or implausible?

Yes. Appellant admitted that, at the time of the incident, he was so intoxicated that he suffered "alcoholic amnesia." Drunk and disorderly conduct—regardless of whether an individual is suffering from "alcoholic amnesia" during the course of his misbehavior—is, in itself, an offense under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. This appellant admitted that he had made physical advances to the victim, who was the wife of one of his fellow squadron members, but asserted that he does not remember any-

1. In *Van Arsdall,* the defense had been improperly restricted in cross-examining a prosecution witness. The Supreme Court rejected the view that such a constitutional deprivation amounted to reversible error *per se,* noting the following
   Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or

absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. *Cf. Harrington [v. California],* 395 U.S. [250], at 254 [89 S.Ct. 1726, at 1728, 23 L.Ed.2d 284] [1969]; *Schneble v. Florida,* 405 U.S. [427], at 432 [92 S.Ct. 1056, at 1059, 31 L.Ed.2d 340] [1972].
475 U.S. at ___, 106 S.Ct. at 1438.

thing that happened after she removed his hand from her breast.

What difference does it make if this appellant is a law-abiding person when he is sober? The important question here is: What did he do (or will he do) when he allowed (or allows) himself to become so intoxicated that he incurred (or incurs) the condition of "alcoholic amnesia"?

> Third: What is the materiality of the proffered testimony? Is the question whether or not the accused was the type of person who would engage in the alleged criminal conduct fairly raised by the Government's theory of the case or by the defense?

As I stated earlier, I believe the proffered testimony was relevant and material, but here it had little weight. If this "outstanding" officer had not breached the faith placed in him when he was commissioned, he would not have found himself in the awkward position of arguing that his lustful advances toward his fellow-officer's wife must have been consented to, albeit he was too drunk to remember.

> Fourth: What is the quality of the proffered defense evidence and is there any substitute for it in the record of trial?

**2.** I have elsewhere expressed my profound belief that the citizens of this great Nation have a right to expect that persons who serve as commissioned officers within the armed forces will conduct themselves in accordance with the very highest standards of behavior and honor. My belief is strengthened by the Supreme Court's observation in *Parker v. Levy,* 417 U.S. 733, 744, 94 S.Ct. 2547, 2556, 41 L.Ed.2d 439 (1974):

> We have ... recognized that a military officer holds a particular position of responsibility and command in the Armed Forces:
> "The President's commission ... recites that *'reposing special trust and confidence* in the

Despite the military judge's ruling, this record is replete with evidence of appellant's good record. His former commanders testified that appellant

> (1) had a reputation for being law-abiding;
>
> (2) was not aggressive toward women; and
>
> (3) was truthful and trustworthy.

They also testified about appellant's assignment history; and, of course, appellant appeared in court with all his decorations displayed upon his uniform. Thus, there is a more than adequate substitute in the record for the proffered evidence.

In conclusion, there is no doubt in my mind that the court members at appellant's court-martial knew and understood exactly what was before them—an otherwise good officer drank too much; he attempted to take advantage of a fellow officer's wife; she resisted; and he got overly aggressive. Indeed, in my opinion, their decision that he should be dismissed from the service was entirely appropriate.[2]

Except as to mulitiplicity, I would affirm the decision of the Court of Military Review without hesitation.

> patriotism, valor, fidelity and abilities' of the appointee he is named to the specified rank during the pleasure of the President." *Orloff v. Willoughby,* ... [345 U.S. 83], at 91 [73 S.Ct. 534, at 539, 97 L.Ed.2d 842] [1953].

(Emphasis added.) Because of my strong feelings, I am simply unwilling to allow the concept of "an officer and a gentleman" to erode on my watch. *United States v. Scott,* 21 M.J. 345, 350–52 (C.M.A. 1986) (Cox, J., concurring); *United States v. Johanns,* 20 M.J. 155, 162–65 (C.M.A.) (Cox, J., concurring in part, concurring in the result in part), *cert. denied,* —— U.S. ——, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985).