UNITED STATES, Appellee,

v.

Sergeant First Class Keith A. HOOKS, 092–46–2141, United States Army, Appellant.

CM 449098.

U.S. Army Court of Military Review.

8 June 1987.

---

For Appellant: Luther C. West, Esquire (argued), Captain Clayton A. Aarons, JAGC (on brief).

For Appellee: Captain Thomas L. Herrington, JAGC (argued), Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Larry D. Williams, JAGC (on brief).

Before O'ROARK, RABY and CARMICHAEL, Appellate Military Judges.

## OPINION OF THE COURT

RABY, Senior Judge:

Appellant was found guilty of rape and kidnapping (by wrongfully inveigling and holding "L.R." against her will) in violation of Articles 120 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. secs. 920 and 934 (1982). His sentence to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of Private E1 was approved by the convening authority.

■■■ Appellant asserts that the evidence of record is insufficient to sustain the findings of guilty of rape and kidnapping. We disagree and find these assignments of error to be without merit. Regarding the rape offense, we are satisfied that competent evidence of record establishes beyond a reasonable doubt that the act of sexual intercourse was committed by appellant by force and without the victim's consent. We find that under the circumstances, L.R. did make her lack of consent known to appellant and that he capitalized on both her fear of death and his superior strength to minimize and overcome her resistance.[1] We find that under these circumstances, the victim offered all the physical and psychological resistance that she dared by waving at a passing car, by attempting to persuade appellant not to rape her, and by trying to push appellant away from her during the first incident of rape; by trying to open the car door during the second incident of rape; and by crying, begging, and trembling throughout the entire criminal episode. Based on the above and all relevant and admissible evidence of record, we conclude that the victim, L.R., did make her lack of consent to sexual intercourse reasonably known to appellant by the resistance she offered, and that any further resistance on her part not only was futile but was overcome by her reasonable fear of death or great bodily harm at the hands of appellant. See generally Manual for Courts-Martial, United States, 1984 [hereinafter M.C.M., 1984], Part IV, para. 45c(1)(b); United States v. Hicks, 24 M.J. 3, 6 (C.M.A.1987) ("[t]he force used to accomplish the sexual intercourse may be actual or constructive" and "constructive force may consist of expressed or implied threats of bodily harm"); United States v. Williamson, 24 M.J. 32, 34 (C.M.A.1987) (resistance is not required when it would be futile, and the totality of the circumstances, including the level of resistance, are to be considered by the fact finder in determining the issue of consent); United States v. Henderson, 15 C.M.R. 268, 273 (C.M.A.1954) (rape victim's resistance need only be such as to make a want of consent and actual resistance reasonably manifest—having regard to her age, her strength, and the surrounding circumstances); United States v. DeJonge, 16 M.J. 974, 976 (A.F.C.M.R.1983) ("Resistance of the victim is a relative term and must be considered in accordance with the special circumstances of each case.... Consent to sexual intercourse if induced by fear, fright or coercion is equivalent to physical force.").

■■■ We have found appellant's contention of insufficient evidence of kidnapping (by inveigling and holding the victim against her will) also to be without merit,

---

1. We find that the victim, L.R., constantly was in fear of death from the time appellant drove her into the woods and before the first act of rape until she successfully escaped from his control after the third act of rape. We are satisfied based on the totality of the circumstances that the victim's fear of death was reasonable, and that her fear was known to the appellant. In this regard, we believe it most significant that when the victim informed appellant before the first rape that she was afraid of him and begged him not to kill her, he did not immediately attempt to allay her fears but instead capitalized on them by declining to deny an intent to kill her, and by telling her "to keep quiet and just get undressed." We find that such conduct under the circumstances constituted an implied threat of death or grievous bodily harm, even though appellant at other times may have informed the victim that he would not hurt her. We further find that appellant's conduct was intended by him to, and in fact did, operate in conjunction with his superior strength to coerce and force the victim into refraining from offering any substantial resistance to appellant's criminal misconduct.

*see United States v. Hoog,* 504 F.2d 45 (8th Cir.1974), *cert. denied,* 420 U.S. 961, 95 S.Ct. 1349, 43 L.Ed.2d 437 (1975); *United States v. Hughes,* 716 F.2d 234 (4th Cir. 1983), and we specifically elect to make the following supplemental findings of fact: that when appellant first offered the victim a ride to her destination she asked him if he was stationed in Ramstein; that in response appellant lied and asserted he was from Mannheim when in fact he was residing in Kaiserslautern. From these facts and other circumstances of record, it can be inferred and we do so infer that appellant purposely misled the victim as to where he lived because he intended to hold her against her will in order to rape her.

Appellant next asserts that the military judge erred when he ruled that evidence of appellant's good military character was inadmissible on the merits. We disagree.

The record of trial reveals that appellant called his battalion commander, LTC C, who pertinently testified that appellant had an unblemished reputation for truthfulness in his community;[2] that appellant was in LTC C's opinion law-abiding; that appellant was not known prior to this incident to have violated "military or civil law"; that appellant's reputation in his "unit and in the community" reflected no incident that would indicate he was not a law-abiding citizen; that appellant's reputation "in the command in [the] community" and LTC C's opinion of appellant was that the latter was "a peaceful individual." Appellant's battery commander, CPT W, testified that in his opinion, after observing appellant on a daily basis for about ten months, appellant was "an extremely truthful person"; that appellant enjoyed a reputation for truthfulness and honesty in the battalion or in the

military community in Ramstein that was "very good"; that in his opinion appellant was "very law-abiding"; that appellant enjoyed a reputation for being a "law-abiding character in the community"; that in his opinion appellant was not violent but was "very peaceable"; and that appellant also enjoyed a peaceable reputation in the community. Appellant's First Sergeant, 1SG C, testified that he had substantial daily contact for over a year during duty hours with appellant, who was a platoon sergeant; that appellant "is an outstanding Sergeant First Class, an outstanding soldier" who "does his job"; that he would believe appellant under oath; that appellant's reputation in the military community for truthfulness and honesty is that "he is a truthful NCO.... [h]e's believable"; that appellant "is a law-abiding character" with an "outstanding" reputation for being a law-abiding person; that appellant is a "peaceful type" of individual whose community reputation for peacefulness is "Good. Outstanding."

Thus, we note that the trial record reflects that appellant's general military character traits as an "outstanding Sergeant First Class" and "outstanding soldier" who "does his job" were introduced into evidence without objection, although the military judge's instructions to the members neither required them to disregard this testimony nor provided them with guidance as to how it could be utilized in this particular form.[3]

The relevant rule for the introduction of character evidence is found in the Manual For Courts-Martial, United States, 1984, Military Rules of Evidence [hereinafter Mil.R.Evid.] 404. We are satisfied that in promulgating this rule the Presi-

---

**2.** We infer that this testimony relates to appellant's reputation for truthfulness in his *military* community, as LTC C came in contact with appellant only two or three times a week in the performance of duty, over an approximately twenty-three month period.

**3.** We are aware that a "diversity of views" may exist as to the precise definition of the term "good military character." However, we are convinced that the term "has a generally under-

stood core of meaning and that, when a witness testifies about an accused's military character, the fact finder understands generally what is meant." *United States v. Vandelinder,* 20 M.J. 41, 45 (C.M.A.1985). We have no doubt that the court-martial members, aware that the appellant was a Sergeant First Class and a platoon sergeant, knew *exactly* what was meant when his battery First Sergeant testified that he was an outstanding Sergeant First Class and soldier.

dent intended, as did the Joint Service Committee on Military Justice, "to allow the defense to introduce evidence of good military character when that specific trait is pertinent." M.C.M., 1984, Analysis to Mil. R.Evid. 404(a)(1), App. 22, A22–32; *see also United States v. Court*, 24 M.J. 11, 14 (C.M.A.1987); *United States v. Vandelinder*, 20 M.J. 41, 44 (C.M.A.1985).

 Good military character clearly was intended to be a "pertinent trait" in some cases, and "it is the substance of the alleged misconduct which is pivotal to a determination whether such evidence is 'pertinent.'" *Court*, 24 M.J. at 14. We believe, based on the nature and elements of the charges and their specifications, together with the circumstances surrounding appellant's off-post, off-duty rape and kidnapping of a German female, that the portion of the direct evidence of appellant's military character which was excluded from evidence was not *pertinent* within the meaning of Mil.R.Evid. 404(a)(1). In this regard, we find the facts of this case clearly distinguishable from *United States v. Piatt*, 17 M.J. 442 (C.M.A.1984) (where the charges against appellant arose in the context of the performance of his military duties as a drill instructor); and *Vandelinder*, 20 M.J. 41, 43 (good military character is a pertinent character trait in military drug cases, as drug offenses strike at the

heart of military discipline and readiness and persons of good military character are less likely to commit such offenses); and *Court*, 24 M.J. 11, 15 (evidence of an officer's good military character may be relevant to show that such a person would never engage in the charged conduct, and relevant to the element which is unique to Article 133, 10 U.S.C. § 933).[4]

 Assuming *arguendo* that certain direct evidence of military character was excluded erroneously as appellant asserts, we are satisfied, in light of the four-prong test of *United States v. Weeks*, 20 M.J. 22, 25 (C.M.A.1985), that appellant suffered no prejudice. First, we find the Government's case against the accused, although based primarily on the victim's testimony, to be strong and conclusive. At the outset we note that the court members, who were both officer and enlisted, found the victim's testimony credible.[5] We agree with their resolution of the credibility issues arising in the case at bar. Having independently exercised our own unique statutory fact-finding power, we conclude that the victim's testimony was clear, logically consistent, corroborated in certain significant areas of controversy, not successfully impeached, and credible. Second, although the defense's theory of the case was not "feeble," it was as to major relevant and material matters "implausible"[6] and basi-

---

4. We do not believe that such evidence is relevant to establish that an alleged offense is or is not service discrediting, nor do we find such evidence relevant to the issue of whether such conduct is prejudicial to good order and discipline. It is the conduct and circumstances surrounding its commission that is relevant as to those issues. Further, we believe the government—which also is entitled to fair trial considerations—could have successfully interposed an objection at trial based on Mil.R.Evid. 403, as the excluded evidence would have served to confuse greatly the real issues involved.

5. In a bitterly contested case, such as the case at bar, the courtroom demeanor of the witnesses can be of great probative value in determining credibility. This is precisely why Article 66(c), 10 U.S.C. § 866(c) expressly requires this court to judge witness credibility and determine controverted questions of fact "recognizing that the trial court saw and heard the witnesses."

6. For example, appellant testified that the victim did not cry or scream at all when she was with him in the woods; however, the victim's testimony about trembling, being afraid, and crying was corroborated by the testimony of A.K., the motorist into whose car the victim escaped. A.K. testified that the victim begged him to leave the area immediately "otherwise she might be killed" and that she was "trembling and crying all [the] while." Further, the victim told A.K. she had been raped. Additionally, appellant testified that he only had intercourse with the victim once, and that he "stopped" after a brief period of only three or four minutes because the victim complained of pain in the groin. By this testimony appellant clearly implies that he did not ejaculate (as he "stopped" at the victim's request). The victim, however, testified that she was raped three times by appellant. Her testimony regarding this rape sequence is corroborated factually by the stipulated testimony of Dr. H.K., who found that a

cally lacking in credibility. *See United States v. Wilson,* 20 M.J. 31, 32 (C.M.A. 1985). Third, we believe that the defense's theory of the case adequately raises the issue of whether the accused was the type of person who would engage in rape and kidnapping. But, considering the broad range of character-trait evidence duly admitted—evidence in which appellant's reputation in his military community for several pertinent and specific traits of character was inherent—we are satisfied that the exclusion of appellant's so-called good military character from evidence, as well as the determination not to give a tailored instruction on character evidence, did not deprive the fact finders of any material testimony relevant to deciding appellant's guilt or innocence. Fourth, we are satisfied that although the evidence of appellant's good military character was of a very high quality, the character-trait evidence admitted in this case constituted an acceptable substitute and mitigated effectively the impact of the trial judge's ruling. *See Wilson,* 20 M.J. at 32.[7] Thus, assuming *arguendo* that error occurred in this case, appellant was not prejudiced thereby. Accordingly, this assignment of error is without merit. UCMJ art. 59(a), 10 U.S.C. § 859(a).

Finally, appellant asserts that the military judge's questioning of appellant's company commander and the trial counsel's argument on sentencing, both separately and combined, placed undue emphasis upon relations between the United States and the Federal Republic of Germany. We disagree with appellant's assessment of both the tone and impact of this matter, and find this assertion to be without merit.

■ First, we find that trial defense counsel's failure to pose a timely and specific objection to both incidents constituted waiver. Mil.R.Evid. 103(a); R.C.M. 905(e), 1001(g). We believe waiver provisions should be strictly enforced during presentencing proceedings, as errors then arising normally as can be obviated or corrected when timely called to the military judge's attention. *See generally United States v. Williams,* 23 M.J. 776, 781–782 (A.C.M.R. 1987) (en banc); *United States v. McPhaul,* 22 M.J. 808, 814–815 (A.C.M.R.) (dictum), *petition denied,* 23 M.J. 266 (C.M.A.1986).[8]

■ Second, assuming but not deciding that error did occur during appellant's presentencing procedure, we are satisfied that appellant was not prejudiced thereby. *See generally* UCMJ art. 59(a). In this regard, we note that appellant was sentenced by the court to only five years of

---

vaginal smear of the victim contained sperm, that "[t]he underpants of the victim revealed a *massive* trace of sperm in the crotch," that "substance A" found in the sperm samples taken from the underpants originated from a "substance A secretion blood grouping," and that appellant "has such a blood grouping." (Emphasis added.)

7. We have already detailed the massive amount of character-trait evidence which was before the fact finders. Moreover, the fact finders, who are well aware of military rank structure, would have personally observed appellant in court wearing his military uniform with its accoutrements. The court members were aware that appellant was a Sergeant First Class, held the responsible leadership position of platoon sergeant, and was strongly supported by three of the most prominent members of his chain of command, that is, his battalion commander, battery commander and battery first sergeant. Each of these soldiers normally would be in such a position of leadership as to have an

accurate knowledge of appellant's military character, and each strongly supported the appellant in their sworn testimony. Thus, we are satisfied that the court members neither were misled nor, in fact, deprived of actual knowledge of appellant's overall good military character *in addition to* the specific character testimony given by each of the three witnesses.

8. We also note that appellant could have raised this matter before the convening authority took his action. R.C.M. 1105(b)(1). The convening authority, of course, has the power to disapprove, modify or suspend appellant's sentence and may order a sentence rehearing. Thus, in his discretion, the convening authority, as a matter of clemency and fundamental fairness, could have granted appellant adequate relief from any asserted sentencing errors. Appellant's failure to raise the issue with the convening authority is but another example of the extent of appellant's waiver of this issue. UCMJ art 60(d), 10 U.S.C. § 860(d); Mil.R.Evid. 1105(d).

confinement when the maximum permissible confinement was confinement for "life." Even giving utmost consideration to appellant's unblemished good character and military record, which, except for three previous incidents of nonjudicial punishment, were outstanding, we do not believe, in light of appellant's inveigling [9] and repeated raping of a German girl under terrorizing circumstances,[10] that he received a disproportionate sentence.

The findings of guilty are affirmed.

However, in view of appellant's claim that his sentence was excessive, and in deference to his years of loyal military service, we will, *sua sponte*, reassess his sentence. In doing so we will totally disregard any impact which this crime may have had on German-American or community relations. Reassessing the sentence on the basis of the entire record, the sentence is affirmed.

Chief Judge O'ROARK and Judge CARMICHAEL concur.

---

9. "Inveigle" is an element of kidnapping and means to lure, lead astray, or entice by false representations or other deceitful means. M.C.M., 1984, pt. IV, para. 92c(1).

10. Finally, assuming waiver is not applicable, appellant's failure to raise this issue timely constitutes "strong evidence" that the impact of these remarks at trial was not prejudicial. *Cf. United States v. Palmiter*, 20 M.J. 90, 97 (C.M.A. 1985) (failure to raise timely an issue regarding the legality of pretrial confinement conditions constitutes "strong evidence" that the confinee was not illegally punished prior to trial).