**UNITED STATES**

v.

**Mark W. MARSHALL, 080–68–3959, Aviation Machinist's Mate Third Class (E–4), U.S. Navy.**

**NMCM 97 00533.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 6 Nov. 1996.

Decided 11 March 1999.

LT John D. Holden, JAGC, USNR, Appellate Defense Counsel.

Robert A. Parks, Civilian Defense Counsel.

Maj Troy D. Taylor, USMC, Appellate Government Counsel.

Before SEFTON, Chief Judge, TROIDL and COOPER, Appellate Military Judges.

1. The appellant also pled not guilty to, and was acquitted of, one specification of violating Article 120, UCMJ, rape of a child under the age of 16, and a second specification of violating Article 125, UCMJ, sodomy with a child under the age of 16.

2.
I. THE APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL DEFENSE COUNSEL.
II. THE EVIDENCE ADDUCED AT TRIAL IS FACTUALLY INSUFFICIENT TO SUPPORT A CONVICTION BEYOND A REASONABLE DOUBT.
III. WHETHER THE MILITARY JUDGE ERRED BY ALLOWING INTO EVIDENCE

COOPER, Judge:

The appellant was tried on 9 and 24 September, and 5 and 6 November 1996 by a general *court-martial*, military judge alone. He was convicted, contrary to his pleas, of one specification of sodomy with JM, a child under the age of 16, in violation of Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925 (1994).[1] We have reviewed the record of trial, the appellant's assignments,[2] of error and the Government response. After careful consideration, we conclude that error materially prejudicial to the substantial rights of the appellant was committed. We set aside the findings and sentence and authorize a rehearing. Arts. 59(a) and 66(c), UCMJ.

### Ineffective Assistance of Counsel

The appellant contends that his military defense counsel were ineffective for the following reasons: 1) not contacting and calling witnesses the appellant identified and requested; 2) failing to elicit relevant facts from a material witness and settling for a written stipulation; 3) failing to call the character witnesses previously agreed upon to support his defense; 4) failing to present a case on sentencing; and 5) not being committed to his case.[3] Brief and Assignment of Errors of 31 July 1998 at 5; Affidavit of M.W. Marshall of 26 February 1998.

In *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the U.S. Supreme Court articulated

ALLEGEDLY CONFESSIONAL STATEMENTS ATTRIBUTED TO THE APPELLANT.
IV. THE MILITARY JUDGE ERRED BY RULING, OVER DEFENSE OBJECTION, THAT THE HEARSAY TESTIMONY OF DR. CRAIG, A GOVERNMENT EXPERT PEDIATRICIAN, WAS ADMISSIBLE UNDER THE "MEDICAL TREATMENT" EXCEPTION TO THE HEARSAY RULE.

3. Appellate Defense counsel listed numbers 1 and 2 in his brief. Appellant in his affidavit complained about numbers 3–5. We have reviewed the entire record for instances of possible ineffective representation and prejudice. We have also looked at the quality of investigation and presentation of the motion to suppress the statements made by JM to Captain Craig.

the following standard for evaluating claims of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

### Background

The Government's case was one primarily of hearsay and circumstantial evidence. It presented the testimony of the five-year-old victim, JM. We find insufficient evidence in the record to establish that she understood the difference between truth and falsity. Her answers were confusing, and we are unconvinced of her reliability.[4] In essence, however, she testified that her father had not touched her inappropriately and never came into her bedroom except to tuck her in bed and to kiss her goodnight. The Government also offered JM's out-of-court statements to her daycare provider, her social worker, and Captain Craig, Medical Corps, U.S. Navy, who is a Navy pediatrician and expert in child abuse.[5] These statements implicated both the appellant and her stepbrother as persons who may have sexually abused her. Captain Craig presented medical evidence that the victim's buttocks and anus showed abnormalities which, in her opinion, could have been caused and were consistent with anal sexual abuse. Notably absent were any admissions of the appellant or testimony of witnesses who ever saw the appellant mistreat his daughter.

The defense theories were first that JM was not abused; and second even if she was, the appellant did not do it. In support of the first theory the defense called an expert in child abuse, Lieutenant Colonel Boos, U.S. Air Force. He testified that the physical findings were consistent with sexual abuse but were not strong evidence of sexual abuse and occurred naturally in a small percentage of children. In support of the second theory, the defense relied primarily on the cross-examination of the Government witnesses: the daycare provider, JM's mother, and Captain Craig. During cross-examination the defense attempted to show that JM's stepbrother was physically aggressive towards JM, that he had abused JM and another child, and that both JM and the stepbrother were accomplished liars. JM's mother testified on cross-examination that JM told her in June 1996 that the appellant, her father, had never touched her. Record at 41. Two other witnesses, Mrs. FW and Mrs. V, testified that JM adored her father, and that her stepbrother knew and used adult sexual language. A stipulation of expected testimony from PO1 VW, U.S. Navy provided evidence of a good relationship between the appellant and both of his children.[6]

During the sentencing phase, the Government presented evidence regarding the long-term effects of abuse on a child. The defense called **no witnesses**, and **presented**

---

4. Military Rule of Evidence 601, Manual For Courts-Martial, United States (1998 ed.) states that all witnesses are competent unless otherwise provided in the rules. We note that Mil.R.Evid. 603 requires that all witnesses are required to declare they understand their duty to testify truthfully. A child witness cannot be excluded because of their age if the military judge is assured that they know that they must tell the truth. *See United States v. Morgan*, 31 M.J. 43 (C.M.A.1990); *United States v. LeMere*, 22 M.J. 61 (C.M.A.1986). JM's responses to the military judge regarding whether she understood the difference between at truth and a lie were mixed; as was her ability to promise to tell the truth. The decision whether or not to exclude the witness rests with the military judge and must be made by weighing Mil.R.Evid. 601 and 603. Although we were unconvinced of her reliability and ability to differentiate between truth and falsity, we do not, under the circumstances of this case, find a clear abuse of discretion on the part of the military judge in admitting the testimony.

5. The defense unsuccessfully attempted to suppress JM's out-of-court statements made to Captain Craig during the doctor's examination.

6. The availability of this witness is uncertain. It appears from appellant's affidavit that she was in town during part of the proceedings. There is no witness request or motion to compel production of this witness in the record.

nothing from the appellant's service record.[7] The defense presented no matters in mitigation even though the appellant had no negative matters in his service record and had a number of potential witnesses available to testify in mitigation. The defense counsel only presented one document regarding the availability of rehabilitative treatment at a Navy brig.

In his post-trial affidavit, the appellant indicates that he gave his defense counsel a list of nine potential witnesses who could vouch for his good character, his positive relationship with his children, and his daughter's propensity to tell lies. These issues are all relevant to the defense theories. It appears that only three of the nine persons were contacted or interviewed prior to trial. The appellant presented affidavits from PO2 H, U.S. Navy, and Mr. S, a former Navy petty officer, both of whom supervised appellant and indicated that they were willing to testify on his behalf, but were never contacted by the defense. Their affidavits provided information which counsel failed to discover. We find that this information meets the appellant's burden to provide specific information that counsel should have discovered with reasonable investigation. *See United States v. Russell*, 48 M.J. 139, 141 (1998). Additionally, appellant presented the affidavits of two other witnesses: PO3 H, U.S. Navy, and PO1 VW, U.S. Navy, who did talk with defense counsel. PO3 H was present at trial, waiting to testify, but was not called on either the merits or on sentencing. PO1 VW's affidavit and clemency letter indicate she was potentially a valuable witness to rebut JM's out-of-court statements. We find disturbing PO1 VW's comment that the defense counsel told her that her presence would not make a difference in this trial. The clemency letters contain favorable information which would have been useful for the military judge on the merits and if necessary, on sentencing.

The fact that most of the witnesses were available during the trial compounds the error. Appellant's affidavit and those of these other witnesses were not rebutted.[8]

## Analysis

We start with the presumption that counsel was competent. *United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987). But after reviewing the record as a whole, including the unrebutted affidavits submitted by the appellant, we find that counsel's performance was so deficient as to not meet prevailing professional norms. In particular, we find that counsel's failure to recognize, investigate, and present evidence of the appellant's good character falls below any objective standard of reasonableness.

Military practice allows the introduction of good military character evidence by the defense in order to create reasonable doubt about the allegations against an accused. *United States v. Benedict*, 27 M.J. 253 (C.M.A.1988); *United States v. Court*, 24 M.J. 11 (C.M.A.1987); *United States v. Belz*, 20 M.J. 33 (C.M.A.1985); Military Judges' Benchbook, Dept. of the Army Pamphlet 27–9, ¶ 7–8 (30 Sept. 1996). Evidence of the appellant's good character in no way contradicted the defense theories of the case, and would have greatly complimented them, and more significantly, may have given rise to reasonable doubt. As our superior court has said, "the power of character evidence cannot be underestimated." *United States v. Gagan*, 43 M.J. 200, 202 (1995). Despite this obvious line of favorable evidence, defense counsel failed to contact witnesses identified by the appellant, had one witness present for trial but never called her on either the merits or during sentencing, and reduced another available witness' testimony to a lukewarm stipulation of expected testimony.

We are always reluctant to second-guess and label as ineffective assistance what may

7. The information presented during sentencing is in stark contrast to the quantity and quality of information presented by the assistant defense counsel who handled the post-trial clemency request. With this information available, it makes us wonder why it was not gathered and presented either on the merits or sentencing as appropriate.

8. Because the appellant's affidavit and those of the other witnesses are unrebutted, we take as fact that the appellant's assertion that he provided these names to his counsel and that the proposed witnesses were either not interviewed or were inexplicably not called despite their apparent value to the appellant's defense.

have been defense counsel's strategy at trial, *United States v. Rivas*, 3 M.J. 282, 289 (C.M.A.1977); in this case, there is no evidence that counsel even evaluated the good character evidence, much less made a tactical decision to avoid presenting this evidence. *See, e.g., United States v. Weathersby*, 48 M.J. 668, 671 (Army Ct.Crim.App.1998)(holding that counsel's tactical decision during the findings phase of trial not to use good character evidence did not run afoul of the first prong of the ineffective assistance of counsel standard). We can find no plausible trial strategy for the actions of counsel in this case.

As outlined above, the Government's evidence was far from overwhelming. The appellant had a good military record and identified witnesses who would testify as to his good military character and loving relationship with his children. This favorable evidence could have given rise to reasonable doubt.[9] For these reasons, counsel's failures to investigate, evaluate, and present this favorable evidence were so serious as to render the results of trial unreliable. Accordingly, we find that the appellant has satisfied both prongs of *Strickland* and that there has been material prejudice to the substantial rights of the appellant. We will provide relief in our decretal paragraph.[10]

### Conclusion

The findings and sentence are set aside. The record is returned to the Judge Advocate General for return to the same or different convening authority. A rehearing is authorized.

Chief Judge SEFTON and Judge TROIDL concur.

---

9. Making the tactical decision not to present such evidence, once counsel has ascertained its existence and evaluated its potential value, is absolutely legitimate. *See United States v. Christy*, 46 M.J. 47 (1997).

10. Our resolution of this assignment of error makes it unnecessary to address the remaining assignments of error. We do note, however, the paucity of information provided by both sides in litigating the defense motion to suppress JM's out-of-court statements to Captain Craig and express reservations as to whether it satisfied the tests established in *United States v. Deland*, 22 M.J. 70 (C.M.A.1986).